820 F.2d 592
 7 Fed.R.Serv.3d 837
 Martin HARRIS, Albert Anthony, Orlando X. McCrea, Tyrone
Glenn, Carlos Royster, Amin Abdullah, Khalid Allah
Muhammad, and Arnold Rutick, Charles
Oakes, Emanuel Gardner
v.
Irene PERNSLEY, individually and in her official capacity as
Commissioner of the Department of Human Services of the City
of Philadelphia, Royal L. Sims, Rev. Albert Campbell, Labora
Bennett, James Barber, Mark Mendel, Donald Padova, each
individually and in his or her official capacity as a member
of the Board of Trustees of the Philadelphia Prison System,
David S. Owens, individually and in his official capacity as
Superintendent of the Philadelphia Prison System, Gueton
Curione, individually and in his official capacity as Warden
of Holmesburg Prison, Phillip Dukes individually and in his
official capacity as Warden of the Detention Center, John
Daughen, individually and in his official capacity as Warden
of the House of Corrections, Rodney D. Johnson,
individually, Leo C. Brooks, individually, James S. White,
individually and in his official capacity as Managing
Director of the City of Philadelphia, William J. Green,
individually, Hon. Wilson Goode, individually and in his
official capacity as Mayor of Philadelphia, City of
Philadelphia, Jay C. Waldman, individually and in his
official capacity as General Counsel for the Commonwealth of
Pennsylvania, Ronald J. Marks, individually, Glen Jeffes,
individually and in his official capacity as Commissioner of
the Pennsylvania Department of Corrections.
Appeal of Ronald D. CASTILLE, District Attorney of
Philadelphia County, Proposed Intervenor.
 No. 87-1025.
 United States Court of Appeals,
Third Circuit.
 Argued March 3, 1987.
Decided May 15, 1987.
Rehearing and Rehearing In Banc
Denied June 15, 1987.
 
 Sarah B. Vanderbraak (argued), Chief, Civil and Exceptional Litigation, Harriet R. Brumberg, Asst. Dist. Atty., Ronald Eisenberg, Chief, Appeals Unit, Gaele McLaughlin Barthold, Deputy Dist. Atty., Office of the Dist. Atty., Philadelphia, Pa., for appellant.
 David Richman (argued), Philip H. Lebowitz, Thomas J. Wamser, Mary P. Hughues, Pepper, Hamilton & Sheetz, Philadelphia, Pa., for appellees Martin Harris, Albert Anthony, Orlando X. McCrea, Tyronne Glenn, Carlos Royster, Amin Abdullah, Khalid A. Muhammad, Arnold Furtick, Charles Oakes and Emanuel Gardner.
 Handsel B. Minyard, City Sol., Richard J. Gold, Chief Deputy City Sol. (argued), Guy P. Vilim, Chief Asst. City Sol., Doris M. Leisch, Asst. City Sol., Office of the City Sol., Philadelphia, Pa., for all City of Philadelphia appellees.
 Before GIBBONS, Chief Judge, and SEITZ and GARTH, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 Ronald Castille, the District Attorney of Philadelphia County, appeals the orders of the district court denying his motion to intervene as of right, 113 F.R.D. 615, and approving the settlement agreement reached by the parties in this prison conditions litigation, 654 F.Supp. 1042. This court has appellate jurisdiction pursuant to 28 U.S.C. Sec. 1291 (1982).
 
 I.
 
 2
 In 1982 ten inmates at the Holmesburg Prison in Philadelphia filed a pro se complaint in federal district court seeking damages and injunctive relief for themselves and for a class consisting of all inmates of the Holmesburg prison since that date and all future Holmesburg inmates. Counsel appointed for the plaintiffs filed an amended complaint, pursuant to 42 U.S.C. Sec. 1983 (1982), alleging that the conditions of the prison violated the eighth and fourteenth amendments. The amended complaint named as defendants the City of Philadelphia, the Philadelphia officials responsible for supervising the prisons, the Board of Trustees of the Philadelphia Prison System, the Warden of the Holmesburg Prison (collectively, the City Defendants or the City), and several state officials.
 
 
 3
 The district court dismissed the action on res judicata and abstention grounds in light of state court litigation, Jackson v. Hendrick, challenging the constitutionality of the Philadelphia prisons. This court reversed the district court's conclusion that the Jackson v. Hendrick litigation precluded hearing this action. Harris v. Pernsley, 755 F.2d 338 (3d Cir.1985). We denied the City's petition for rehearing on March 21, 1985. 758 F.2d 83 (3d Cir.1985). On November 4, 1985, the Supreme Court denied the defendants' petition for certiorari. --- U.S. ----, 106 S.Ct. 331, 88 L.Ed.2d 314 (1985).
 
 
 4
 After remand to the district court, the plaintiffs filed a second amended complaint expanding the plaintiff class to include the inmates of all the Philadelphia prisons and adding the wardens of the Detention Center and the House of Corrections as party defendants. The plaintiffs and City defendants then entered into settlement negotiations. On August 8, 1986, they informed the court that they had reached agreement. On this same date, the Mayor wrote the District Attorney a letter informing him that the parties had reached an agreement in this litigation and in the pending state court action.[1] A copy of a proposed consent decree was submitted to the district court on August 15.
 
 
 5
 On August 19 the District Attorney filed a motion to intervene as of right, pursuant to Fed.R.Civ.P. 24(a), as a full party defendant, or in the alternative, to intervene permissibly under Fed.R.Civ.P. 24(b). Both the City Defendants and the plaintiffs opposed this motion.
 
 
 6
 The parties then withdrew the proposed consent decree. After consulting with representatives of the District Attorney and the state courts, the City defendants renegotiated a settlement agreement with the plaintiffs. On October 3, the parties, except the state court defendants, submitted a second proposed consent decree to the court. It contained, among other things, a limit on the prison population.
 
 
 7
 After the second proposed consent decree was delivered to the district court, the District Attorney filed a proposed answer to the plaintiffs' complaint denying that the conditions in the Philadelphia prisons were unconstitutional. In addition, he submitted a proposed cross-claim against the City Defendants, alleging that the proposed consent decree unlawfully interfered with his functions. The cross-claim sought a declaratory judgment that the City had no power to interfere with the District Attorney's duties, including entering an agreement that would result in the release of inmates who are serving sentences or who present either a threat to the community or a risk that they will fail to appear for trial. The District Attorney also sought a permanent injunction against the City to prevent it from entering any settlement that interfered with his duties.
 
 
 8
 The district court held two evidentiary hearings and heard oral argument on the District Attorney's motion to intervene. The District Attorney presented witnesses and introduced stipulated statements of a number of persons. Appellees did not present any evidence, but did cross-examine the District Attorney's witnesses.
 
 
 9
 Edward Rendell, the District Attorney from January 1978 to January 1986, testified that he had no knowledge of this litigation while he served as the District Attorney. He further testified that he believed that a cap on prison populations would affect the District Attorney's interest in prosecutions because those released without posting bail would not appear for their trials.
 
 
 10
 The present District Attorney testified that he did not learn of this litigation until August 1986. Deputy District Attorney Eric Henson testified that he became aware of this litigation in March 1985, when he read this court's opinion, and that he did not bring the case to the attention of the then District Attorney. He further stated that at that time he believed the City defendants were adequately representing the District Attorney's interest and that should the City decide not to litigate the case, it would inform the District Attorney before taking any action.
 
 
 11
 The District Attorney presented the testimony of Maria Terpolilli, the Senior Supervisor of the Bail Hearings Unit of the Pretrial Services Division of the Philadelphia Court of Common Pleas, to provide evidence of the failure to appear rates for persons under various release programs, including the one instituted by the Jackson v. Hendrick litigation, and of the rearrest rates for persons released under the Jackson v. Hendrick program.[2] The District Attorney attempted to show that the failure to appear and rearrest rates under the Jackson v. Hendrick program were extremely high. After cross-examination of Terpolilli, however, the district court refused to admit the ratios that Terpolilli derived from her statistics, finding the ratios "meaningless."
 
 
 12
 In addition, the District Attorney proffered statements from a number of state court officials as to their discussions with City officials about the proposed agreements. Finally, the parties stipulated to statements from prison officials concerning the improvements in prison conditions since the Jackson v. Hendrick litigation was instituted. After hearing oral argument, the district court took the District Attorney's motion to intervene under advisement.
 
 
 13
 At the beginning of the hearing on the proposed consent decree, the district court informed the District Attorney that it was going to deny his motion to intervene. With the consent of the parties, however, the court permitted the District Attorney to present his objections to the proposed consent decree, both at the hearing and in written submissions. At the hearing, the District Attorney argued that the proposed settlement would endanger public safety, that there was no reason to enter such an agreement absent a finding that the conditions in the Philadelphia prisons were unconstitutional, that the consent decree went beyond what is required by the Constitution, and that the settlement would, in effect, undo the bail determinations and sentences of state court judges. The City and the plaintiffs reiterated their contention that the proposed settlement was fair and reasonable.
 
 
 14
 On December 31, the district court filed its opinion and order formally denying the District Attorney's motion to intervene, finding that he failed to meet any of the requirements of the rule for intervention of right. In addition, she denied his motion for permissive intervention. Because of these rulings it was not necessary for the district court to address the District Attorney's proposed answer to the complaint and proposed cross claim. On this same date, the district court entered its order approving the settlement agreement proposed by the plaintiffs and City defendants.[3] These appeals by the District Attorney followed.[4]
 
 II.
 
 15
 The District Attorney asserts that, contrary to the district court's ruling, he has an absolute right to intervene in this action as a full-party defendant to litigate the constitutionality of the conditions of the Philadelphia prison system and the relief, if any, to which the plaintiffs may be entitled. Under Rule 24(a)(2),[5] a person is entitled to intervene if (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation. See Commonwealth of Pennsylvania v. Rizzo, 530 F.2d 501, 504 (3d Cir.), cert denied sub nom. Fire Fighters Union v. Pennsylvania, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976). Although these requirements are intertwined, each must be met to intervene as of right. See, e.g., New Orleans Public Service, Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 463 (5th Cir.) (in banc), cert. denied sub nom. Morial v. United Gas Pipe Line Co., 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984); 3B J. Moore & J. Kennedy, Moore's Federal Practice p 24.07 at 24-50 (2d ed. 1982); 7C C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure: Civil 2d Sec. 1908 at 262 (1986).[6]
 
 A.
 
 16
 Because of its pervasive importance in the setting of the case, we at once focus on the second requirement: whether the District Attorney has shown a sufficient interest in this litigation. This circuit has not addressed what type of interests are necessary to entitle an applicant to intervene as of right. And as one court has noted, given the multitude of situations in which intervention controversies can arise, what constitutes such an interest "defies a simple definition." Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc., 725 F.2d 871, 874 (2d Cir.1984).
 
 
 17
 The Supreme Court has stated that under Rule 24(a)(2), an applicant's interest must be one that is "significantly protectable." Donaldson v. United States, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1970). Several circuits have concluded that an applicant must demonstrate a legal interest in the action to intervene as of right. Southern Christian Leadership Conference v. Kelley, 747 F.2d 777, 779 (D.C.Cir.1984) (the interest must be "legally protectable"); New Orleans Public Service, Inc., supra, 732 F.2d at 463 (intervention as of right requires a "direct, substantial, legally protectable interest in the proceedings"); Wade v. Goldschmidt, 673 F.2d 182, 185 (7th Cir.1982) (same). But see Smith v. Pangilinan, 651 F.2d 1320, 1324 (9th Cir.1980) (an applicant "need not show that he has a legal or equitable interest in jeopardy ... [but] must show that he has a 'protectable interest' in the outcome of the litigation of sufficient magnitude to warrant inclusion in the action.") (citations omitted). In addition, a number of courts have concluded that this interest must be "direct," as opposed to contingent or remote. See Restor-A-Dent Dental Laboratories, supra, 725 F.2d at 874; Air Lines Stewards and Stewardesses Association, Local 550 v. American Airlines, Inc., 455 F.2d 101, 105 (7th Cir.1972); 3B Moore's Federal Practice, supra, p 24.07 at 24-59.
 
 
 18
 Courts have not been able to develop more than these general guidelines to answer what type of interest is necessary for intervention. See generally, 3B Moore's Federal Practice, supra, p 24.07 at 24-57 ("The exact nature of the interest required ... has eluded a precise and authoritative judicial definition...."). Because Rule 24(a)(2) was designed to permit courts to solve intervention disputes in a pragmatic manner, it "requires consideration of all the competing and relevant interests raised by an application for intervention." United States v. Hooker Chemicals & Plastics Corp., 749 F.2d 968, 983 (2d Cir.1984); see Neusse v. Camp, 385 F.2d 694, 700 (D.C.Cir.1967).
 
 B.
 
 19
 With these rather conclusory guidelines in mind, we turn now to the District Attorney's argument that the district court erred in concluding that this litigation did not sufficiently implicate his interests to require intervention under Rule 24(a)(2). We must first determine the scope of review of the district court's determination denying the District Attorney's motion for intervention of right.
 
 
 20
 As we noted above, intervention controversies arise in many different contexts, and require the court to consider the pragmatic consequences of a decision to permit or deny intervention. The variety of situations in which an application may arise counsels against setting strict legal standards by which courts may measure applications under Rule 24(a)(2). See Shreve, Questioning Intervention of Right--Toward A New Methodology Of Decisionmaking, 74 Nw. U.L. Rev. 894, 916-24 (1980). This same reasoning supports an abuse of discretion standard of review, which we now adopt. See United States v. Hooker Chemicals & Plastics Corp., supra, 749 F.2d at 991. But see People of State of California v. Tahoe Regional Planning Agency, 792 F.2d 779, 781 (9th Cir.1986) (district court's denial of intervention as of right reviewed de novo ).
 
 
 21
 We note, however, that our review of district court's decisions denying intervention of right is more stringent than the abuse of discretion review accorded to denials of motions for permissive intervention. Rule 24(a)(2) restricts the district court's discretion by providing that an applicant "shall be permitted to intervene" if he or she satisfies the requirements of the Rule. See Stringfellow v. Concerned Neighbors in Action, --- U.S. ----, 107 S.Ct. 1177, 1185 n. 1, 94 L.Ed.2d 389 (1987) (Brennan, J., concurring). We, therefore, will reverse a district court's determination on a motion to intervene of right if the court "has applied an improper legal standard or reached a decision that we are confident is incorrect." United States v. Hooker Chemicals & Plastics Corp., supra, 749 F.2d at 992; see generally, United States v. Criden, 648 F.2d 814, 817-19 (3d Cir.1981) (discussing the meaning of the "abuse of discretion" standard of review).
 
 
 22
 In this case, the District Attorney asserts a legal interest in support of his motion to intervene: his duties as a public official. The scope of his interest is defined by the scope of his legal duties under Pennsylvania law.[7] See Olden v. Hagerstown Cash Register, Inc., 619 F.2d 271, 273 (3d Cir.1980). If his rights and duties, as defined by Pennsylvania law, may be affected directly by the disposition of this litigation, the District Attorney has a sufficient interest to intervene as of right in this action. See Blake v. Pallan, 554 F.2d 947, 953 (9th Cir.1977); Hines v. D'Artois, 531 F.2d 726, 738 (5th Cir.1976); see also Neusse v. Camp, supra, 385 F.2d at 700 (state banking commissioner has right to intervene in action brought by a state bank against the Comptroller where federal law incorporates the state's banking laws because he has an interest in the enforcement of the state laws' policies). We turn then to a recitation of the basic terms of the consent decree so that they may be juxtaposed with the authority accorded the District Attorney under Pennsylvania law.
 
 
 23
 At the time the consent decree was approved, there were 4300 inmates in the Philadelphia prison system; approximately two-thirds of the inmates were awaiting hearing or trial. The decree requires the inmate population in the present facilities to be reduced, in stages, to 3750 persons within six months. The ceiling on the prison population agreed to by the parties is higher than the ones that have been ordered by the Pennsylvania courts in the Jackson v. Hendrick litigation. See, e.g., Jackson v. Hendrick, supra, 503 A.2d at 403; Jackson v. Hendrick, supra, 446 A.2d at 231.
 
 
 24
 If the inmate population of the prisons exceeds the maximum permissible under the consent decree, the agreement provides that the City "shall seek the release, through the mechanism of the Bail Master appointed by the Jackson court or otherwise, of persons being held either on the lowest bail or persons sentenced to the Philadelphia prisons with less than sixty days remaining to serve on their sentences."[8] The City will not to seek the release of inmates charged with murder or forcible rape, or persons who, if released, posed an imminent threat to the public or themselves.
 
 
 25
 The settlement recognizes that the prison population fluctuates daily, and thus provides that the population may exceed the maximum temporarily, but not for more than seven days consecutively or twenty days out of any forty. If the population of a facility exceeds the limit for more than the allowable flux time, the decree provides that the City defendants cannot admit additional inmates to the facility. This provision does not apply to "persons charged with, or convicted of, murder, forcible rape, or a crime involving the use of a gun or knife in the commission of an aggravated assault or robbery."[9]
 
 
 26
 The statute establishing the office of district attorney provides, in relevant part: "The district attorney shall sign all bills of indictment and conduct in court all criminal and other prosecutions...." 16 Pa.Stat.Ann. Sec. 1402(a) (Purdon Supp.1986). The Pennsylvania Supreme Court has interpreted this statute as giving the District Attorney the power, and the duty, "to represent the Commonwealth's interests in the enforcement of its criminal laws." Commonwealth ex rel. Specter v. Bauer, 437 Pa. 37, 41, 261 A.2d 573, 575 (1970). The District Attorney is the "sole public official charged with the legal responsibility of conducting 'in court all criminal and other prosecutions.' " Id. at 43, 261 A.2d at 576 (citation omitted).
 
 
 27
 In particular, the District Attorney advocates specific bail levels and may appeal bail determinations with which he disagrees. See, e.g., Commonwealth of Pennsylvania v. Truesdale, 449 Pa. 325, 296 A.2d 829 (1972) (District Attorney appealing bail decision). The District Attorney also has the power to advocate sentences, to defend convictions in both state court actions and habeas actions in federal court, and to represent the Commonwealth in challenges to the constitutionality of the state's penal statutes. See Specter v. Bauer, supra, 437 Pa. at 42-43, 261 A.2d at 575-76. In short, the District Attorney is charged with the responsibility of enforcing the Commonwealth's criminal statutes.
 
 
 28
 The Philadelphia Home Rule Charter vests the Philadelphia Department of Public Welfare with the responsibility of supervising the Philadelphia prison, including the power to set the capacity of the institutions. 351 Pa.Admin.Code Sec. 5.5-700(c) (1986).[10] The Charter further provides that the Board of Trustees of the Philadelphia Prison System has the responsibility of managing the prisons. 351 Pa.Admin.Code Sec. 5.5-701 (1986).
 
 
 29
 The Home Rule Charter, however, cannot provide the City with powers contrary to those granted by state statutes. 53 Pa.Stat.Ann. Sec. 13133(b) (Purdon 1957). The Charter, thus, cannot provide support for the City to encroach on any duties vested in the District Attorney by state statute. Specter v. Bauer, supra, 437 Pa. at 43, 261 A.2d at 576.
 
 
 30
 Given the pertinent terms of the consent decree and the legal duties of the District Attorney, we must decide whether the duties enumerated above are implicated sufficiently in this prison overcrowding litigation that the District Attorney has the right to intervene. As we understand the District Attorney's position, he seeks to intervene in this action to litigate the prisoners' claims of unconstitutional conditions and to prevent a settlement to which he objects. According to the District Attorney, he has a right to intervene as a full-party defendant because limits on prison populations are a traditional response to a finding of unconstitutional conditions in prisons and this remedy would adversely affect his functions.
 
 
 31
 The District Attorney asserts that a limitation on the prison population will interfere with his prosecutorial powers in two ways. First, he argues that a prison cap will result in the release of inmates who have not posted the bond set by state court judges or inmates who have not served their full sentences. This, in turn, will result in his work going for naught and will hamper his ability to prosecute cases because those released without posting bond will not appear for their trials.
 
 
 32
 Second, he directs the court's attention to the fact the prison cap may make it impossible for the City prisons to admit additional persons. He contends that if the City refused to operate any jails, the refusal would interfere with his duties because his function as a prosecutor would be rendered meaningless. According to the District Attorney, it therefore follows that if some individuals are not admitted to prison because of the ceiling placed on the prison population, his role is rendered meaningless for those individuals.
 
 
 33
 In considering whether the District Attorney has a sufficient interest in this case, for intervention purposes, we will analyze the District Attorney's position in two stages: first, whether he has a right to intervene to oppose the plaintiff's claims of unconstitutional conditions on the merits and second, whether he has a right to participate in the formation of the remedy.
 
 
 34
 Given the nature of an applicant's interest, he or she may have a sufficient interest to intervene as to certain issues in an action without having an interest in the litigation as a whole.[11] See Howard v. McLucas, 782 F.2d 956, 962 (11th Cir.1986) (nonminority employees have the right to intervene to challenge the promotional remedy, but not to contest the existence of past discrimination); Bradley v. Milliken, 620 F.2d 1141, 1142 (6th Cir.1980) (representative of Hispanic community has right to intervene for the limited purpose of presenting evidence on question of de jure segregation of Hispanics); see generally Shapiro, Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators, 81 Harv.L.Rev. 721, 752-56 (1968) (discussing limited intervention as of right). Examining an applicant's asserted interest in terms of discrete phases of an action seems particularly appropriate in institutional litigation. In institutional reform litigation, while only some individuals may be held liable for the unlawful conduct, and thus have an interest in the determination of liability, a larger number of persons' interests may be infringed on at the remedial stage of the litigation. See, e.g., Equal Employment Opportunity Commission v. American Telephone and Telegraph Co., 506 F.2d 735 (3d Cir.1974).
 
 C.
 
 35
 We thus turn to the District Attorney's contention that he has a right to intervene to litigate whether the conditions in the prison are unconstitutional. Under Pennsylvania law, the City defendants are vested with the responsibility of managing the prison system. It is the City, therefore, that would incur any liability, including attorney's fees under 42 U.S.C. Sec. 1988 (1982), if the prison conditions were found to violate the Constitution.
 
 
 36
 The District Attorney, on the other hand, has no legal duties or powers with regard to the conditions in the Philadelphia prison system. He has no function in the administration of the prisons. His participation in the liability stage could not contribute to a greater understanding of the issues involved in this phase of the litigation.
 
 
 37
 Moreover, after five years in the federal courts, and fifteen years in the state courts, the City officials charged both with the duty of managing the prisons and presumably an awareness of the situation, have concluded that they should not litigate the issue of the constitutionality of the conditions in the prisons. This combination of circumstances leads us to conclude that the District Attorney, who has no role in the prison management and cannot be held liable for any unlawful conditions, does not have the right to prevent the City from effectuating its reasoned judgment that it is best not to litigate the action. Otherwise stated, the District Attorney has no interest entitling him to litigate the plaintiffs' contention that the conditions in the Philadelphia prison system are unconstitutional.
 
 D.
 
 38
 We now address the more difficult question presented on appeal: whether the District Attorney has the right to intervene as a party in the formation of the terms of the settlement agreement in this case. The district court denied the District Attorney's motion because it found that the enforcement of the Commonwealth's penal statutes was not an issue in this case. It further stated that "[w]hile the final disposition of this action--either by settlement or by injunctive relief granted after a finding of unconstitutional conditions--could have some effect on the District Attorney's enforcement function, it is not the kind of direct, substantial interest that permits intervention as of right." The District Attorney asserts that the court committed a legal error in so concluding.
 
 
 39
 As discussed above, the District Attorney has the power and duty to advocate bail levels, to prosecute defendants, to recommend sentences once defendants are convicted, to defend convictions on appeal, and to defend challenges to the Commonwealth's penal statutes. He is the official who represents the Commonwealth's interests in criminal law enforcement.
 
 
 40
 The consent decree presented to, and approved by, the district court does not alter any of the duties enumerated above. The District Attorney is not prevented from performing his statutory duties. He is not obligated to take any action, or refrain from any action, by the decree; moreover, he could not be held in contempt under this decree. In short, none of his enumerated legal duties are taken away by the settlement approved in this case.
 
 
 41
 Because the consent decree does not alter the District Attorney's legal duties, Cobb v. Aytch, 539 F.2d 297 (3d Cir.1976), cert. denied sub nom. Engelfried v. Aytch, 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 554 (1977), does not control this case. In Cobb, inmates of the Philadelphia prisons challenged the transfer of prisoners between the county and state prisons and named as defendants two state officials--the Attorney General and the Commissioner of Corrections--and three city officials--the District Attorney, the Commissioner of Police, and the Superintendent of the Philadelphia Prisons. The district court approved an agreement reached between the state officials and the plaintiffs, and the city officials appealed. We held that the court erred in approving the settlement over the objections of the Superintendent because, although the decree did not mention him, it took away his right, granted by state statute, to petition the state authorities to accept inmate transferees from the Philadelphia prisons. Id. at 300-01. In this case, by contrast, the decree does not limit the District Attorney's exercise of his statutory duties.
 
 
 42
 The District Attorney argues, however, that although the decree does not impinge expressly on his functions, his powers will be affected as a practical matter by the operation of the decree. In particular, he argues that the prison cap will hinder his ability to prosecute cases because some of the pre-trial detainees released will not appear for trial. He also asserts that if the City is forced to refuse admissions to the prisons, his role as a prosecutor will be rendered meaningless as to those not admitted. Finally, he asserts that his participation as a party is necessary to protect the public interest.
 
 
 43
 We agree with the District Attorney that Rule 24(a)(2) directs the courts to consider the practical consequences of the litigation in passing on an application to intervene as of right. As one court has noted, "the court is not limited to consequences of a strictly legal nature ... [but] may consider any significant legal effect on the applicant's interest...." National Resources Defense Council, Inc. v. United States Nuclear Regulatory Commission, 578 F.2d 1341, 1345 (10th Cir.1978). Courts thus have found that an applicant has a sufficient interest to intervene when the action will have a significant stare decisis effect on the applicant's rights, e.g., Smith v. Pangilinan, supra, 651 F.2d at 1325, or where the contractual rights of the applicant may be affected by a proposed remedy, e.g., Little Rock School District v. Pulaski County Special School District, No. 1, 738 F.2d 82, 84 (8th Cir.1984); Equal Employment Opportunity Commission v. American Telephone and Telegraph Co., supra, 506 F.2d at 741-42.
 
 
 44
 At the same time, however, to have an interest sufficient to intervene as of right, "the interest must be 'a legal interest as distinguished from interests of a general and indefinite character.' " United States v. American Telephone and Telegraph Co., 642 F.2d 1285, 1292 (D.C.Cir.1980), quoting Radford Iron Co. v. Appalachian Elec. Power Co., 62 F.2d 940, 942 (4th Cir.1933). In many cases, especially class action litigation, the disposition of the action will have some impact on the interests of third parties. To intervene as of right as a party to the litigation, however, the applicant must do more than show that his or her interests may be affected in some incidental manner. Rather, the applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene. See, e.g. United States v. Perry County Board of Education, 567 F.2d 277, 279 (5th Cir.1978).
 
 
 45
 Ceilings on prison population are a common remedy in prison overcrowding cases. See, e.g., Inmates of Allegheny County Jail v. Wecht, 754 F.2d 120 (3d Cir.1985); Badgley v. Varelas, 729 F.2d 894 (2d Cir.1984); Duran v. Elrod, 713 F.2d 292 (7th Cir.1983), cert. denied, 465 U.S. 1108, 104 S.Ct. 1615, 80 L.Ed.2d 143 (1984). To the extent that the ceiling on the prison population, and any resultant release of inmates, may be required to maintain constitutional conditions in the prisons, the District Attorney has no legally protected interest in causing the constitutionally-imposed maximum to be exceeded. Simply stated, he can have no interest in assuring the incarceration of persons under unconstitutional conditions. Cf. Stotts v. Memphis Fire Dept., 679 F.2d 579, 582 (5th Cir.), cert. denied, 459 U.S. 969, 103 S.Ct. 297, 74 L.Ed.2d 280 (1982) ("There is no legally cognizable interest in promotional expectations which presumptively could only occur as the result of discriminatory practices."). The District Attorney argues, however, that the attempt by the City to agree to a prison ceiling interferes with his duties and thus, he has a right to intervene in this action.
 
 
 46
 We are persuaded that the District Attorney's argument that he has a right to be a party to this litigation overstates his role as the law enforcement officer of the Commonwealth. But see Jackson v. Hendrick, supra 446 A.2d at 232-34 (1982) (Nix, J., dissenting) (release of pretrial detainees affects the District Attorney's functions).[12] The District Attorney's argument assumes that he has the right to oversee the entire criminal justice system in Philadelphia. Under Pennsylvania law, however, a number of different actors have legal duties with respect to the system of criminal justice. For example, it is the duty of the state court judges to determine the bail status of those accused, 42 Pa.Cons.Stat.Ann. Sec. 1123 (Purdon Supp.1986), and to set the sentences of those convicted. 42 Pa.Cons.Stat.Ann. Sec. 9701 et seq. (Purdon 1982 and Supp.1986. The Mayor and City Council, moreover, have the authority to determine the size of the police force through their control of the City budget. 351 Pa.Admin.Code Secs. 2.2-300, 4.4-101 (1986). Any action by one of actors in the system is likely to have some repercussions in terms of the other actors' duties.
 
 
 47
 We must respect the boundaries that the Commonwealth has chosen to draw as to the responsibilities of its public officials. But we decline to equate the District Attorney's function as the spokesperson for Pennsylvania's interest in criminal prosecutions with the responsibility for policing the entire criminal justice system. Although we agree with the District Attorney that the decree may result in some people not appearing for their scheduled trial dates and some individuals not having to post bond before being released, this by-product of the decree is not sufficient to give the District Attorney the right to become a party to any consent decree entered in this case. Cf. Graddick v. Alabama, 453 U.S. 928, 934-35, 102 S.Ct. 4, 8-9, 69 L.Ed.2d 1025 (1981) (Powell, J., in chambers) (expressing his doubt that the Attorney General of Alabama had standing to seek a stay of a court order releasing inmates from prison when the Governor, who was vested with the responsibility for the prison system, opposed the Attorney General's motion); but cf. Id. at 941-43, 102 S.Ct. at 11-12 (Rehnquist, J., in chambers) (explaining that he believes that the Attorney General has standing in light of his interest in law enforcement and the fact he was a party to the litigation).
 
 
 48
 Moreover, we reject the District Attorney's assertion that the City officials will be insensitive to concerns for public safety. Experience has demonstrated in similar cases that the officials in charge of the prisons are attuned to such concerns and will return to the court to seek a modification of the decree if the ceiling threatens the safety of the public. See Duran v. Elrod, 760 F.2d 756 (7th Cir.1985).
 
 
 49
 We therefore conclude that the District Attorney has not asserted a sufficient interest to intervene in this action as of right. This conclusion, moreover, is consistent with the approach that other circuits have taken when a public official has petitioned to intervene as of right. Where the public official has demonstrated only a general interest in the litigation, his motion to intervene has been denied. See, e.g., Blake v. Pallan, supra, 554 F.2d at 953 (state securities commissioner does not have a sufficient interest in class action suit merely because the action contains some pendent state claims); People of State of California v. Tahoe Regional Planning Agency, supra, 792 F.2d at 782.
 
 
 50
 On the other hand, courts have found that the official had a sufficient interest to intervene in cases in which the subject of the suit came within the scope of his official duties. In Smith v. Pangilinan, supra, for example, the Ninth Circuit concluded that the Attorney General, as the official charged with the administration of the nation's immigration laws, had a sufficient interest to intervene in an action in which the plaintiffs sought to have the court determine whether they were persons who would, in the future, be able to become United States citizens. See also Hines v. D'Artois, supra, 531 F.2d at 738 (state examiner for the Civil Service has right to intervene where relief sought by plaintiff involved changes in the civil service examination); Neusse v. Camp, supra, 385 F.2d at 700 (state banking commissioner had an interest in action in which the federal law incorporated the substance of the state law because the litigation involved "the nature and protection of the state policy"). Because we believe that the District Attorney's interests fall within the first category of cases, we find that the district court did not abuse its discretion in denying the motion to intervene as of right.
 
 
 51
 Given our conclusion that the District Attorney does not have a sufficient interest to intervene of right as a party in this action, it is not necessary to review the correctness of the district court's determinations that the District Attorney did not meet the other requirements of the intervention rule. Moreover, we need not reach the issue of whether the district court abused its discretion in denying the District Attorney's motion for permissive intervention because he has not argued this issue on appeal and we deem it waived. See United States v. Hooker Chemical & Plastics Corp., supra, 749 F.2d at 969.
 
 
 52
 We would add that, although the District Attorney is not entitled to intervene as of right, we think it was entirely appropriate for the district court to permit the District Attorney to be heard on the terms of the consent decree, however his status may be otherwise legally characterized. Indeed, permitting persons to appear in court, either as friends of the court or as interveners for a limited purpose, may be advisable where third parties can contribute to the court's understanding of the consequences of the settlement proposed by the parties. See, e.g., Kirkland v. New York State Dept. of Correctional Services, 711 F.2d 1117, 1125-27 (2d Cir.1983), cert. denied sub nom. Althiser v. New York State Dept. of Correctional Services, 465 U.S. 1005, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984) (permitting nonminority employees to intervene to object to the affirmative action provisions in a proposed consent decree).
 
 III.
 
 53
 The District Attorney also appeals the order of the district court approving the proposed consent decree. The source of the district court's authority to enter a consent decree is the parties' agreement. See Local No. 93, International Association of Firefighters v. City of Cleveland, --- U.S. ----, 106 S.Ct. 3063, 3076, 92 L.Ed.2d 405 (1986). As the Supreme Court has stated,
 
 
 54
 Consent decrees are entered into by parties after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation.
 
 
 55
 United States v. Armour & Co., 402 U.S. 673, 681-82, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971).
 
 
 56
 Because a consent decree is an agreement between the parties to settle a case, one who is properly denied intervention cannot appeal the merits of the case. See Commonwealth of Pennsylvania v. Rizzo, supra, 530 F.2d at 508. The District Attorney's appeal of the merits, therefore, must be dismissed.[13]
 
 
 57
 In dismissing the District Attorney's appeal of the consent decree, we do not intend to imply that a district court can avoid its independent obligation to determine that, as a matter of subject matter jurisdiction, such terms " 'come within the general scope of the case made by the pleadings.' " Local No. 93, supra, --- U.S. ----, 106 S.Ct. at 3077, 92 L.Ed.2d 405, quoting Pacific R. Co. v. Ketchum, 101 U.S. (11 Otto) 289, 297, 25 L.Ed. 932 (1880); Sansom Committee v. Lynn, 735 F.2d 1535, 1538 (3d Cir.); cert. denied sub nom. Trustees of University of Pennsylvania v. Sansom Committee, 469 U.S. 1017, 105 S.Ct. 431, 83 L.Ed.2d 358 (1984). That the relief comes within the scope of the pleadings, however, is not in question here. Moreover, because we conclude that the merits of the case are not properly before us, we are not called upon to decide in this case what legal and factual foundations are required for the district court to enter a consent decree.[14]
 
 IV.
 
 58
 In light of the foregoing, the order of the district court denying the District Attorney's motion to intervene as of right will be affirmed.
 
 
 59
 The appeal of the District Attorney from the order of the district court approving the consent decree will be dismissed.
 
 GARTH, Circuit Judge, dissenting:
 
 60
 The District Attorney of Philadelphia has sought to intervene to prevent the release of prisoners from Philadelphia's jails and to prevent interference with his statutory duty to enforce the Commonwealth's criminal laws. The district court denied his right to intervene, and the majority of this court now sustains that position by holding that the District Attorney "has not asserted a sufficient interest to intervene in this action as of right ... [because he has] demonstrated only a general interest in the litigation." Maj.Op., at 602.
 
 
 61
 I dissent from the analysis and holding of the majority not only because I believe that the district court erred as matter of law[1] in not recognizing the right of the District Attorney to intervene, but also because I believe that a district court cannot enter a judgment, by consent or otherwise, which requires release of state prisoners or prohibits their entry into prison without a threshold finding that the conditions of confinement are unconstitutional.[2]
 
 I.
 
 62
 The District Attorney is entitled to intervene as of right if three conditions are satisfied: (1) he must have a sufficient interest in the subject matter of the litigation, an interest that may as a practical matter be affected by the court's disposition of the case; (2) his interest must not be adequately represented by the existing parties; and (3) his application must have been timely. Pennsylvania v. Rizzo, 530 F.2d 501, 504 (3d Cir.), cert. denied 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976). Because the majority has chosen to decide this case on the first of the three intervention prongs, i.e. the sufficiency of the District Attorney's interest, I will similarly concentrate my analysis on this aspect of the appeal. In doing so, however, I observe that the record reveals, and I therefore conclude, that the District Attorney has satisfied all three of the requirements for intervention of right.[3]
 
 
 63
 I agree with the majority's statement that, if the District Attorney's "rights and duties, as defined by Pennsylvania law, may be affected directly by the disposition of this litigation, the District Attorney has a sufficient interest to intervene as of right in this action." Maj.Op., at 597. But the majority's conclusion that the District Attorney lacks such an interest in this case is utterly at odds not only with this standard, but also with the intent of Federal Rule of Civil Procedure 24(a),[4] to say nothing of its clear language.
 
 
 64
 Prior to the 1966 amendment of Rule 24 ... the pre-amendment Rule required that the applicant might be "bound" by the judgment in the pending action and the prevailing weight of authority interpreted this test to mean bound in the res judicata sense. See, e.g., Sam Fox Publishing Co. v. United States, 366 U.S. 683, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961). The changes wrought in Rule 24(a) have repudiated that narrow approach in general, and Sam Fox in particular. The Rule now specifies only that the "disposition of the action may as a practical matter impair or impede his ability to protect" the applicant's interest. This alteration is obviously designed to liberalize the right to intervene in federal actions. Interestingly, an earlier draft would have required that the judgment "substantially" impair or impede the interest, but that higher barrier was deleted in the course of approving the amendment.
 
 
 65
 Nuesse v. Camp, 385 F.2d 694, 701 (D.C.Cir.1967). See also 7C C. Wright, A. Miller and M. Kane, Federal Practice and Procedure, Sec. 1908 at 301.[5] I agree with the conclusions of the District of Columbia Circuit and the treatise authors, that "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." Nuesse, 385 F.2d at 700.
 
 
 66
 Reason, common sense, and logic compel the conclusion that, under these liberal intervention standards and in a case of such exceptional public importance to the Philadelphia citizenry as the instant proceeding, the Philadelphia District Attorney, who is the single City official most directly responsible for the enforcement of the criminal laws, has a sufficient interest in this litigation to intervene by right. The District Attorney must be permitted to intervene not only to represent his interest and the public interest in the enforcement of the Commonwealth's laws, but also to prevent interference with his legislatively assigned functions.
 
 
 67
 The interest of the District Attorney is far from the general interest attributed to him by the majority. See maj. op., at 601-603. Rather it is a particularized interest, delineated by state statute and case law, under which the Pennsylvania Legislature has assigned to the District Attorney specific functions relating to the prosecution of criminals and the defense of sentences lawfully imposed upon completion of successful prosecutions. There can be no doubt that the District Attorney's ability to effectively carry out his prosecutorial duties and responsibilities is, as a practical matter, impaired and impeded by the Consent Decree entered in this lawsuit.
 
 
 68
 Under Pennsylvania statutes the District Attorney is given sole responsibility for enforcing the criminal laws in the county in which he serves.[6] The District Attorney is responsible for prosecuting those charged with criminal violations, defending convictions in post-verdict proceedings, advocating the amount at which bail should be set, and defending the committing magistrate's bail decisions.
 
 
 69
 Each of the two proposed Consent Decrees presented to the district court in this case, implicates these prosecutorial interests of the District Attorney. In addition to population ceilings, proposed Consent Decree I imposed specific time constraints and duties on the District Attorney. It required, for the first time, that criminal defendants receive their preliminary hearings within 21 days of incarceration, that a municipal court trial be held within 120 days of some unspecified point, that a Common Pleas trial be held within 180 days of the filing of the complaint, that a probation revocation hearing be held within 60 days of arrest, and that sentencing occur within 120 days of conviction.[7]
 
 
 70
 Because the District Attorney would have been the primary person responsible for meeting the deadlines imposed by proposed Consent Decree I, there can be little question but that the District Attorney's ability to carry out his official duties was directly impaired by the proposed settlement. Moreover, because proposed Consent Decree I mandated the automatic release of prisoners whose hearings or trials were not held within the required time periods, the decree denied the District Attorney his statutory right to object to the release of dangerous prisoners. In re Miller, 209 Pa.Super. 47, 224 A.2d 89, 90 (1966) (16 Pa.S.A. Sec. 1402 imposes upon the District Attorney the duty to represent the Commonwealth with respect to discharge of inmates from state correctional institutions).
 
 
 71
 The Consent Decree approved by the district court (proposed Consent Decree II) did not contain the restrictive time limits of proposed Consent Decree I, but it did not eliminate all of the proposals objected to by the District Attorney. Most importantly, the Consent Decree entered by the court retained the population ceilings and automatic release provisions from proposed Consent Decree I, the very provisions to which the District Attorney has continuously and strenuously objected since Consent Decree I was proposed.
 
 
 72
 These population caps and release provisions necessarily have a direct impact on the District Attorney's ability to exercise his prosecutorial functions. Under the Consent Decree entered by the court, it is expected that the population caps will be effectuated first through bail reductions and early release of sentenced prisoners, and later, if necessary, through non-admission of new inmates. App. at 1096. There can be no reasonable doubt that the District Attorney's ability to successfully and effectively prosecute criminals is directly impeded and intruded upon through an agreement of this type. The Consent Decree's requirement of more extensive pre-trial release of individuals facing prosecution can have no effect other than to insure that fewer individuals charged with a crime will actually appear for trial. Second, as discussed above, the proposal renders nugatory the District Attorney's hitherto unquestioned responsibilities in making bail recommendations.
 
 
 73
 Finally, it strains common sense beyond all ascertainable bounds for the majority to fail to recognize that the District Attorney's prosecutorial function is effectively destroyed by an agreement that can preclude incarceration for newly convicted felons. Under the Consent Decree, the City defendants will be seeking the release of approximately 550 additional inmates who are not eligible for release under any Commonwealth approved early release program. When the non-admission provisions of the Consent Decree are activated, although defendants charged with certain enumerated crimes will be excepted from these provisions, nevertheless the Commonwealth will be precluded from incarcerating defendants charged with or convicted of, among other crimes, attempted murder, attempted rape, kidnapping, involuntary deviate sexual intercourse, robbery, aggravated assault, or narcotics sales.
 
 
 74
 The Pennsylvania courts themselves have explicitly recognized the undeniable interests that the District Attorney has in prison litigation which implicates population ceilings and prisoner releases. In Jackson v. Hendrick, the complementary state action, the Pennsylvania Court of Common Pleas issued a remedial decree in the context of an earlier court determination that unconstitutional conditions of confinement prevailed. See note 2, supra. That decree established maximum capacity at the prisons, prohibited double ceiling, and established procedures for the release of inmates held on bail until the prison population was not in excess of capacity. Jackson v. Hendrick, 72 Pa.Cmwlth. 63, 456 A.2d 229, 230 (1983). The District Attorney sought to intervene in those proceedings, and his request to intervene was denied. However, it is clear that this denial was based solely on timeliness grounds, for the Commonwealth court recognized the important interest of the District Attorney in the subject matter of the dispute. "We recognize, of course, that the remedy ordered in this case affects the prosecutorial interests of the District Attorney. But while his involvement may have justified intervention had his application been timely, it does not fall within the purview of Pa.R.C.P. No. 2252 [governing joinder]." 456 A.2d at 233 (emphasis added).
 
 
 75
 Likewise, In re Miller, 209 Pa.Super. 47, 224 A.2d 89 (1966), recognized the District Attorney's strong interest, and necessary party status, in cases involving the release of prisoners from state correctional institutions. In re Miller involved an appeal by the Commonwealth from an order of a Philadelphia County Court discharging Miller from a state correctional institution. Miller's counsel had argued that the District Attorney was not a proper party to dispute the release. The court disagreed, relying on 16 Pa.S.A. Sec. 1402, which sets forth the general duties of the District Attorney.[8] The court held that one of the District Attorney's duties was the duty to represent the Commonwealth generally in the administration of justice. More specifically, the court held that it was the District Attorney's duty to represent the Commonwealth with respect to discharge of inmates from state correctional institutions. Miller, 224 A.2d at 90.
 
 
 76
 Finally, whether or not there are "other actors" who might have legal duties with respect to the system of criminal justice, see maj.op., at 601-602, cannot detract from the specific legal duties which the Pennsylvania Legislature has chosen to impose upon the District Attorney. I do not believe that the District Attorney here is seeking to "police the entire criminal justice system" of Philadelphia County, as the majority contends. Indeed, the District Attorney has conceded throughout this litigation that he has no interest in conditions of confinement, per se, and therefore he does not object to those portions of the Consent Decree concerned with, for example, prohibitions against double-celling, permissible housing areas, and the requirements for bedding materials.
 
 
 77
 In my view, the District Attorney is quite properly seeking to intervene for the purpose of contesting only those portions of the Consent Decree that directly affect his ability to carry out his prosecutorial functions. I am therefore satisfied that the district court erred as a matter of law in not recognizing the right of the District Attorney to intervene.
 
 II.
 
 78
 The majority opinion does not reach the merits of the District Attorney's objections to the settlement. Because I would hold that the District Attorney was improperly denied the right to intervene, I find that he is a proper party to object to the settlement on appeal, and I therefore consider his substantive objections.
 
 
 79
 I conclude that the district court lacked the power to issue an order, by consent or otherwise, under which these defendants agreed to either release validly sentenced state prisoners or prohibit their entry into prison without a threshold finding that the conditions of confinement were unconstitutional. It is undisputed that no such finding has been made here. Indeed, on the record before this court, it is highly questionable whether the plaintiffs have even established a prima facie case in support of their allegation of unconstitutional conditions of confinement. See Jackson v. Hendrick, 509 Pa. 456, 503 A.2d 400 (1986) (remanding on the basis of Rhodes v. Chapman, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). See also, Union County Jail Inmates v. DiBuono, 713 F.2d 984 (3d Cir.1983), cert. denied, 465 U.S. 1102, 104 S.Ct. 1600, 80 L.Ed.2d 130 (1984). Therefore, I believe that the district court lacked the power to approve the Consent Decree.
 
 A.
 
 80
 Absent a finding of unconstitutionality in the conditions of confinement, the federal courts have no business interfering in state penal matters. A federal court has no power to order release of validly sentenced state prisoners unless they are being held in violation of their constitutional rights. Indeed, I have discovered no case in which a district court has been permitted to order the release of lawfully incarcerated state prisoners absent a finding of unconstitutional conditions. Nor has the majority cited to any such authority.
 
 
 81
 The majority's statement, that "the District Attorney has no legally protected interest in causing the constitutionally-imposed maximum to be exceeded," maj. op., at 601 (emphasis added), quite simply puts the rabbit in the hat. As discussed above, all parties agree that the District Attorney has no interest in the conditions of confinement, per se. But there has been no finding that the conditions of confinement violate the federal Constitution. To the contrary, the most recent consideration of prison conditions by the Supreme Court of Pennsylvania has, in effect, reversed the earlier determination of unconstitutionality and has remanded the issue to the lower court for application of the correct constitutional standards. See note 2, supra.
 
 
 82
 Of course, in the instant case, the district court has not itself directly ordered the release of prisoners. Instead the court has approved a Consent Decree by which the City defendants themselves agree to such a release. But the problem remains because nothing appears of record which demonstrates that the City defendants themselves have the power under law to agree to the release of validly sentenced prisoners or lawfully held pre-trial detainees.
 
 
 83
 It is elementary that a district court cannot approve a consent order, and thereby give a judicial imprimatur of approval to an agreement which goes beyond the power of the consenting parties to make. See, e.g., Overton v. City of Austin, 748 F.2d 941 (5th Cir.1984) (in suit alleging discriminatory at-large election system, absent a finding of illegality in present charter provisions, district court properly refused to approve consent agreement that was beyond power of parties to themselves achieve).
 
 B.
 
 84
 It is beyond dispute that a federal court has the power to release state prisoners who are being improperly held under unconstitutional conditions of confinement. It is also true that the Philadelphia Department of Public Welfare has the power to consent to population ceilings for the prisons under its own supervision, see 351 Pa.Code Sec. 5.5-700(c). Any such freely adopted City prison population ceilings can therefore cap the population at any particular City prison at a lower figure than what would be the "constitutionally permissible maximum" (assuming arguendo that such a concept has any meaning given that the constitutionality of conditions of confinement must be judged under "the totality of the circumstances" standard rather than a per se standard such as "one man-one cell"). But the fact that the City defendants are empowered to set population caps for each Philadelphia prison that they supervise, does not mean that the City defendants can release prisoners when those caps are exceeded. Indeed, I do not understand the District Attorney to challenge the function of the City defendants in determining the capacity of the City prisons so long as all prisoners are accommodated and are not prematurely released or refused admission. The District Attorney can have no interest in the management of the City prisons. But the power to manage the City prisons is not the same as the power to release or the power to refuse to admit validly sentenced prisoners. It is for that reason that the District Attorney centers his attack on the Consent Decree on only those provisions dealing with release and non-admission of prisoners.
 
 
 85
 In fact, it is unclear to me which actor or actors in Pennsylvania have the power to revoke the valid sentences of prisoners--for that is the practical effect of releasing prisoners prior to the service of the term to which they were sentenced. One possibility is that the judges of the Commonwealth are necessary parties in any suit seeking the release of validly sentenced prisoners. The District Attorney vigorously asserts that his statutory role in the bail and sentencing processes makes him a necessary party to any such agreement. Indeed, it is also possible that, absent a finding of unconstitutional conditions of confinement, no single actor or group of actors has the power to reduce or rescind validly imposed sentences.[9] This, however, is not a question that I must reach. For my purposes, it is sufficient to note that the record discloses no evidence to support the contention that the release of prisoners is within the power of any of the present defendants who, by the Consent Decree, seek to exercise that power.
 
 
 86
 Under my analysis, therefore, the City defendants are fully within their rights to agree to the population caps in the Consent Decree. And the district court had the authority to approve that portion of the Consent Decree embodying the population caps. But the City defendants could not arrogate to themselves a power that they did not possess, i.e. the power to release prisoners or refuse to admit prisoners to the City prisons if these self-imposed population limits were exceeded. This being so, the district court lacked the power to approve such an agreement.
 
 
 87
 Thus, had the district court approved a consent agreement that provided for population ceilings alone--without any provision for the release of prisoners or the non-admittance of defendants as a remedy in the event the ceilings were exceeded--such an order would have been appropriate. The cases cited by the majority, see maj.op., at 601, are not to the contrary.
 
 
 88
 Inmates of Allegheny County Jail v. Wecht, 754 F.2d 120 (3d Cir.1985), did affirm the imposition of population ceilings, but in that case, a violation of the federal Constitution had been found. Therefore, Inmates of Allegheny County has no relevance to the instant proceedings, where no such unconstitutional finding has been made.
 
 
 89
 Badgley v. Varelas, 729 F.2d 894 (2d Cir.1984), implicitly recognized the limitations on a federal court to provide release and non-admittance remedies where no finding of unconstitutionality had been made. In Badgley, the court rejected the remedy of prisoner release, and it accepted the remedy of a ban on new admissions only because it was satisfied that the responsible state officials would confine those who were arrested by the police and sentenced by the courts, if not in one state prison, then in another. See 729 F.2d at 902 & n. 9. Thus, Badgley provides no support for the proposition that, absent a finding of unconstitutional conditions of confinement, a federal court has the power to enter an order that would undermine legitimate state sentences or pre-trial detention orders imposed by the state judiciary.
 
 
 90
 Duran v. Elrod, 713 F.2d 292 (7th Cir.1983), cert. denied, 465 U.S. 1108, 104 S.Ct. 1615, 80 L.Ed.2d 143 (1984), as cited by the majority, ignores the subsequent developments that took place and which resulted in the later case of Duran v. Elrod, 760 F.2d 756 (7th Cir.1985) (Posner, J.), which reversed the district court's failure to modify a consent decree allowing for the early release of pre-trial detainees. It is apparent that the later Duran case was uncomfortable with the earlier affirmance of the consent decree entered in that case because there had been no unconstitutional finding made by the court when the decree had been approved. See 760 F.2d, at 759, 763. Thus, whatever may have been deemed an appropriate remedy by the first Duran court was questioned and then rejected by Judge Posner in the second Duran case.
 
 
 91
 Thus, I conclude that no authority exists which will permit a federal court either to reduce valid sentences of state prisoners via a premature release mechanism or to prevent admission to prisons of persons lawfully held absent a finding of unconstitutional conditions of confinement in the state prison system. Other remedies obviously may be imposed, but those remedies cannot provide for the release of prisoners or the non-admission of defendants.
 
 III.
 
 92
 Just as I dissented in Harris v. Pernsley I, 755 F.2d 338 (3d Cir.1985); 758 F.2d 83 (3d Cir.1985) (sur petition for rehearing), because I felt strongly then as I do now that the federal courts had no business running state prisons when the state was actively correcting conditions to meet constitutional standards,[10] so too I dissent here where the majority has failed to acknowledge the overriding necessity of a federal court to find unconstitutional conditions before it enters judgments affecting state prison populations.
 
 
 93
 Moreover, the majority's refusal to accord recognition to the legislative mandate with which the District Attorney was invested by the Commonwealth of Pennsylvania, to enforce and prosecute under the state's criminal laws, can only disrupt further the comity which the Supreme Court has been assiduous in recognizing and promoting. The failure to permit intervention here does a disservice to the citizens of the Commonwealth and warrants the full court's attention on this issue of "exceptional importance."[11]
 
 
 94
 Before GIBBONS, Chief Judge, and SEITZ, WEIS, HIGGINBOTHAM, SLOVITER, BECKER, STAPLETON, MANSMANN and GARTH, Circuit Judges.
 
 SUR PETITION FOR REHEARING
 
 95
 SEITZ, Circuit Judge.
 
 
 96
 The petition for rehearing filed by appellant in the above captioned matter having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.
 
 
 97
 Circuit Judges WEIS and BECKER would have granted rehearing in banc.
 
 
 98
 Circuit Judge GARTH would grant the petition for panel rehearing for the reasons set forth in his attached statement.
 
 GARTH, Circuit Judge, dissenting:
 
 99
 As a Senior Circuit judge, I am permitted to vote for panel rehearing, and I do so in this case. In my opinion, the decision of the majority constitutes an unwarranted intrusion by a federal court into the Commonwealth's prison system before any determination has ever been made that the Commonwealth has violated the Federal Constitution. Not only did the majority ignore the threshold requirement that a finding of unconstitutionality is a prerequisite to federal court oversight, but in addition it erred by refusing to permit the District Attorney of Philadelphia, an indispensible party, to intervene in this federal action. Despite the District Attorney's absence from the federal proceeding, the majority has approved the release from state prison and the non-admission to state prison, of state criminal defendants over whom the federal courts have no authority, absent some violation of the Federal Constitution. As stated, no such violation has as yet been found.
 
 
 100
 In derogation of Pennsylvania statutes and caselaw, the majority has refused to permit the Philadelphia District Attorney to be heard on a settlement between the prisoners and the City that directly and substantially impinges upon his statutory Commonwealth duties. See Commonwealth ex rel. Specter v. Bauer, 437 Pa. 37, 261 A.2d 573 (1970) (District Attorney has "power and duty to represent the Commonwealth's interest in the enforcement of its criminal laws"); In re Miller, 209 Pa.Super. 47, 224 A.2d 89 (1966) (District Attorney has duty to represent Commonwealth with respect to the discharge of inmates from state correctional institutions); Jackson v. Hendrick, 72 Pa.Cmwlth. 63, 456 A.2d 229 (1982) (pre-release of detainees "affects the prosecution interests of the district attorney").
 
 
 101
 Moreover, in approving the denial of the District Attorney's motion to intervene as of right, the majority has employed an erroneous standard of review. As I pointed out in my panel dissent, Harris v. Pernsley, 820 F.2d 592, 594 n. 1, (3d Cir.1987), this court's precedents require plenary review over a district court's denial of a motion to intervene as of right. See Olden v. Hagerstown Cash Register Inc., 619 F.2d 271, 275 (3d Cir.1980) (denial of motion to intervene under Fed.R.Civ.P. 24(a) not an error; denial under Rule 24(b) not an abuse of discretion); Hoots v. Pennsylvania, 672 F.2d 1133, 1135 (3d Cir.1982). In disregard of these authorities and of this court's Internal Operating Procedures, see Third Circuit Internal Operating Procedures, Chapter 8(C), which forbid deviation from a prior precedent of the court without in banc review, the majority has abandoned this court's standard of plenary review and instead has tested the district court's ruling which denied intervention of right under an abuse of discretion standard.[1]
 
 
 102
 Each of these issues by itself warrants rehearing. Each meets the standard of exceptional importance and the need to maintain uniformity of the court's decisions. See Fed.R.App.P. 35(a); Third Circuit Internal Operating Procedures, Chapter 8(B). When both issues are presented in tandem, as they are in this case, it would seem that these questions must be examined by the full court.
 
 
 103
 Were I permitted to vote for rehearing in banc, I would do so. As a senior circuit judge however, I am remitted to voting only for panel rehearing. I so vote.
 
 
 
 [1]
 Jackson v. Hendrick has been pending in the state courts since 1971. A three-judge state court panel held in 1972 that the prisoners' conditions of confinement amounted to cruel and unusual punishment, and ordered the appointment of a special master to assist the court in fashioning appropriate relief. The Pennsylvania Supreme Court affirmed this ruling. Jackson v. Hendrick, 457 Pa. 405, 321 A.2d 603 (1974). Between 1977 and 1983, the parties agreed to a series of consent decrees designed to alleviate overcrowding and other conditions in the prisons. In 1986, the supreme court remanded the case to the Philadelphia Common Pleas Court for consideration of whether the conditions in the Philadelphia prisons continued to violate the federal constitution. 509 Pa. 456, 503 A.2d 400 (1986)
 
 
 [2]
 Under the Jackson v. Hendrick release mechanism, weekly lists of pretrial detainees are sent to a bail master who in turn holds hearings to determine who should be released. The District Attorney has the right to appear at these hearings, and may appeal the decisions of the bail master
 
 
 [3]
 The state defendants are not a part of the consent decree, and none of the terms affect them. Two of the state defendants, Marks and Jeffes, were dismissed without prejudice at the same time as the district court entered its order approving the consent decree. The action is still pending against the other state defendant, Waldman
 
 
 [4]
 On the motion of the District Attorney, we stayed the implementation of the consent decree's ceiling on the population pending the outcome of this appeal
 
 
 [5]
 Rule 24(a) provides, in relevant part:
 Upon timely application anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject matter of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 [6]
 As the Second Circuit has noted, however, a very strong showing that one of the requirements is met may result in requiring a lesser showing of another requirement. See United States v. Hooker Chemical & Plastics Corp., 749 F.2d 968, 983 (2d Cir.1984)
 
 
 [7]
 Whether the legal duties as defined by Pennsylvania law are sufficient to give the District Attorney the right to intervene is, however, a question of federal law. See New Orleans Public Service, supra, 732 F.2d at 466 n. 29
 
 
 [8]
 For a description of the release mechanism used by the Jackson court, see, supra, n. 2
 
 
 [9]
 The consent decree also contains provisions regulating certain living conditions for the inmates. The focus of the District Attorney's motion to intervene, however, is the fact the decree contains a cap on the prison conditions
 
 
 [10]
 Under Pennsylvania law, cities such as Philadelphia have the authority to establish charters for their governments. 53 Pa.S.A. Sec. 13101 (Purdon 1957)
 
 
 [11]
 The Advisory Committee's Note to the 1966 Amendments acknowledge that intervention as of right "may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." Although one authority has objected to placing limitations on those who intervene as of right, see Wright, Miller & Kane, supra, Sec. 1922, we believe that, given the complexity of much public law litigation, permitting courts to limit intervention as of right to discrete phases of the litigation may be necessary in some cases
 
 
 [12]
 The majority in Jackson v. Hendrick, 498 Pa. 270, 446 A.2d 226 (1982), denied the District Attorney's motion to intervene on the ground that the motion was untimely. It did, however, note that the District Attorney "has failed to establish that the denial of intervention has harmed his interest," because he received the opportunity to submit his views on the appropriateness of the remedy. 446 A.2d at 230 n. 12
 
 
 [13]
 Given our determination as well as the district court's ruling on intervention, we reject the District Attorney's contention that by hearing him on the terms of the consent decree the district court, in effect, granted him limited intervention
 
 
 [14]
 It is noteworthy that the district court conducted a careful examination of the proposed settlement before it approved the decree. The court toured the prisons, requested statistical information from the City defendants, and considered the written and oral contentions of the parties and the District Attorney. In addition, it filed a thirty one page memorandum opinion on February 19, 1987, explicating its conclusion that the settlement was fair, reasonable, adequate and in the public interest
 
 
 [1]
 The majority has purported to adopt an abuse of discretion standard for reviewing the denial of intervention of right. Maj.Op., at 597. However, this standard apparently was not utilized because the majority recognized that an applicant shall be permitted to intervene if the requirements of Fed.R.Civ.P. 24(a) are satisfied
 I read this court's precedents as requiring plenary review over a district court's denial of a motion to intervene as of right. See Olden v. Hagerstown Cash Register, Inc., 619 F.2d 271, 275 (3d Cir.1980) (denial of motion to intervene under Fed.R.Civ.P. 24(a) not an error; denial under Rule 24(b) not an abuse of discretion); Hoots v. Pennsylvania, 672 F.2d 1133, 1135 (3d Cir.1982). However, I recognize that the sub-issue of timeliness of the application is reviewed under an absue of discretion standard. Pennsylvania v. Rizzo, 530 F.2d 501, 502 (3d Cir.), cert. denied, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976). The majority, in its opinion, does not address the issue of timeliness, which I discuss infra note 3.
 
 
 [2]
 In Hendrick v. Jackson, 10 Pa.Cmwlth. 392, 309 A.2d 187 (1973), a three-judge state court panel held that the conditions of confinement in the Philadelphia prison system amounted to cruel and unusual punishment. However, in Jackson v. Hendrick, 509 Pa. 456, 503 A.2d 400 (1986), the Pennsylvania Supreme Court assumed extraordinary jurisdiction over the case and held that an Eighth Amendment violation must be judged under the "totality of the circumstances" test rather than the "one-man, one-cell" test that had been employed. The Pennsylvania Supreme Court remanded the proceeding to allow the Philadelphia Common Pleas Court to make factual findings employing the proper constitutional standards. Thus, at this point in time, and at the time of the district court's approval of the consent judgment, no findings of unconstitutional conditions have been made
 
 
 [3]
 The second requirement for intervention, i.e. whether the interest of the intervenor is adequately represented by existing parties, is governed by the discussion found in Commonwealth ex rel. Specter v. Bauer, 437 Pa. 37, 261 A.2d 573 (1970). In Bauer the court held that the Philadelphia City Solicitor was not an adequate representative of the Philadelphia District Attorney "when the District Attorney is engaged, pursuant to his statutory power, in fulfilling his historical duty of representing the Commonwealth's interest in the enforcement of its criminal laws." Id. at 576. To the extent therefore that the district court in this case based its denial of intervention on the ground that the District Attorney's interests were already adequately represented, I conclude that the court erred
 I also conclude that the third requirement for intervention was satisfied, i.e. that the application to intervene was timely. The motion to intervene came within three days of the submission of Proposed Consent Decree I, and was contemporaneous with the beginning of the new negotiations which ultimately led to the Consent Decree adopted by the parties and entered by the court. Moreover, when the District Attorney moved to intervene, there had been no discovery taken, no motions filed, no legal rulings entered, and no class certification approved. To the extent therefore that the district court based its denial of intervention on the grounds of untimeliness, I conclude that the court abused its discretion.
 
 
 [4]
 Rule 24(a) provides in relevant part: "Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."
 
 
 [5]
 Wright, Miller, and Kane, interpreted the 1966 amendment as rejecting any res judicata rule: "The central purpose of the 1966 amendment was to allow intervention by those who might be practically disadvantaged by the disposition of the action and to repudiate the view, expressed in authoritative cases under the former rule, that intervention must be limited to those who would be legally bound as a matter of res judicata." 7C C. Wright, A. Miller and M. Kane, Federal Practice and Procedure, Sec. 1908 at 301
 
 
 [6]
 16 Pa.S.A. Sec. 1402(a) provides: "The district attorney shall sign all bills of indictment and conduct in court all criminal and other prosecutions, in the name of the Commonwealth, or, when the Commonwealth is a party, which arise in the county for which he is elected, and perform all the duties which now by law are to be performed by deputy attorneys general, and receive the same fees or emoluments of office."
 
 
 [7]
 In deciding whether the District Attorney has sufficient interest to intervene in this suit, it is appropriate for this court to consider both proposed Consent Decree I and the subsequently approved Consent Decree II. A potential intervener's interest must be judged in light of the full range of remedies that were being considered when he sought intervenor's status
 Moreover, it was apparently the District Attorney's "limited intervention" in the parties' original settlement discussions that led to the elimination from proposed Consent Decree I of the objectionable time constraints. It was obviously clear to the parties that the District Attorney had a vital interest in the proposed consent decree. Yet, when the District Attorney sought formal intervention to protect these same vital interests, the district court upheld the parties' opposition to his intervention, finding among other things, a lack of the necessary interest. I find this result totally lacking in reason and logic.
 
 
 [8]
 See note 6, supra, for the relevant portions of 16 P.S. Sec. 1402
 
 
 [9]
 I note that under the Federal Rules, judges are entitled to reduce sentences only within 120 days of the imposition of sentence. Fed.R.Crim.P. 35(b). Pennsylvania's Rules appear to be even more restrictive. Under Pa.R.Crim.P. 1410, sentences may be modified by motion of defendants made within 10 days after imposition of sentence. While this rule does not limit the court's inherent power to correct an illegal sentence at any time, see Commonwealth v. Cole, 437 Pa. 288, 263 A.2d 339 (1970), it is unclear whether the judiciary retains the power to reduce a validly entered sentence beyond the ten day period specified by the rules, absent a finding of unconstitutional or other illegal conditions of confinement
 
 
 [10]
 In Harris v. Pernsley I, 755 F.2d 338 (3d Cir.1985), fifty percent of the judges on this court (one short of the majority needed to order rehearing in banc) voted to reconsider a panel decision which ordered the federal courts to supervise the Commonwealth's conduct of its own prison system, thereby reversing the district court's decision to abstain in that proceeding. My dissent in that case identified the overriding principle that a state court in a state system should be the predominant actor in determining how to correct conditions of confinement in a state system. See Harris v. Pernsley I, 758 F.2d 83 (3d Cir.1985) (sur petition for rehearing)
 Just as the petition for rehearing failed by only one vote, so too did the petition for certiorari. Pernsley v. Harris I, --- U.S. ----, 106 S.Ct. 331, 88 L.Ed.2d 314 (1985). Thus, the federal district court was forced to assume the position of overseer of the Commonwealth's prison facilities. It did so even though no finding of unconstitutional conditions was made. Indeed to this very day, no court has ever made such a finding.
 
 
 [11]
 Rehearing in banc is appropriate when "(1) consideration by the full court is necessary to secure or maintain uniformity of its decisions, or (2) when the proceedings involves a question of exceptional importance." Fed.R.App.P. 35(a); Third Circuit Internal Operating Procedures, Chapter 8(B)
 
 
 [1]
 The majority's decision to adopt an abuse of discretion standard of review also conflicts with decisions in several other circuits. See County of Orange v. Air California, 799 F.2d 535, 537 (9th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987); H.L. Hayden Co. v. Siemens Medical Systems, Inc., 797 F.2d 85, 87 (2d Cir.1986); United States v. Allegheny Ludlum Industries, 517 F.2d 826, 841 (5th Cir.1975), cert. denied, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976); Central States, Southeast & Southwest Areas Health & Welfare Fund v. Old Security Life Insurance, 600 F.2d 671, 679 n. 15 (7th Cir.1979). See also, Shreve, Questioning Intervention of Right--Towards a New Methodology of Decision Making, 74 Nw.U.L.Rev. 894 (1980) (recommending that Rule 24 be redrafted to make intervention of right subject to trial court discretion)