**Edith OLDEN, General Administratrix and Administratrix ad Prosequendum of the Estate of William C. Olden, deceased, and Anthony Chiofalo, Administrator ad Prosequendum of the Estate of Philip L. Chiofalo, deceased, Appellee,**

v.

**HAGERSTOWN CASH REGISTER, INC., a Pennsylvania corporation, Defendant-Third-Party-Plaintiff,**

v.

**ALTAIR AIRLINES, INC., Philadelphia International Airport, Philadelphia, Pennsylvania, Third-Party-Defendant,**

**Hartford Insurance Company, proposed Intervenor, Appellant.**

No. 79–1879.

United States Court of Appeals, Third Circuit.

Argued Jan. 7, 1980.

Decided April 14, 1980.

John Matrullo (argued), Hovsepian & Sandler, P. C., Philadelphia, Pa., for appellant.

George F. Kugler, Jr. (argued), Robert T. Egan, Archer, Greiner & Read, Haddonfield, N. J., for appellee.

Before SEITZ, Chief Judge, ADAMS and WEIS, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

In this wrongful death action brought by the widow of an employee killed on the job, the workmen's compensation insurance carrier seeks to intervene to protect its interest in the prospective judgment. Because we conclude that, at this stage, the insurance company's· interest is being adequately championed by plaintiff's prosecution of the lawsuit, we affirm the denial of the motion for intervention.

Plaintiff's decedent, a New Jersey resident, was killed in a midair plane crash in Pennsylvania in April 1977. Because the accident occurred during the course of decedent's employment with a Pennsylvania company, his family was entitled to benefits under the Pennsylvania Workmen's Compensation Act. Within a month the employer's insurance carrier, the Hartford Insurance Company, began periodic payments and established a compensation reserve of $200,000.

Five months after the collision, the administratrix, decedent's widow, filed suit on behalf of herself, her children, and the estate, seeking damages from the owner of the other airplane, defendant Hagerstown Cash Register, Inc. Jurisdiction was grounded in diversity of citizenship, Hagerstown being a Pennsylvania corporation with its principal place of business in that state. Plaintiff's counsel began preparation of the case and some four months later was contacted by an adjuster for the Hartford, who asked for and received a status report.

In September 1978, plaintiff's attorney held a meeting with the Hartford personnel and Paul Sandler, Esquire, a partner of Hovsepian and Sandler, a Philadelphia law firm representing the insurance company. He agreed to give Mr. Sandler permission to attend all depositions and the trial itself but would not consent to his appearing as an attorney of record. Soon thereafter, Mr.

Sandler stated that he had been retained by the insurer on a contingency basis to represent its subrogation interests and that he wished to enter a formal appearance. Plaintiff's counsel then proposed a compromise: that he would be lead counsel, that the Hartford would be solely liable for fees generated by Sandler, and that Mrs. Olden would not be required to share payment of those fees.

The Hartford rejected the compromise and, on December 20, 1978, petitioned the district court for leave to intervene, alleging that it had a subrogation claim for the workmen's compensation payments. In substance, the motion averred that the insurer's interest in recovering its lien was not being adequately protected by the existing parties to the lawsuit.

The petition to intervene was denied by the magistrate who conducted the pretrial proceedings and, on motion to reconsider, by the district judge in a memorandum opinion. The district judge reviewed the application under both Rule 24(a) of the Federal Rules of Civil Procedure for intervention of right, and subsection (b) of the same rule for permissive intervention. Turning first to the intervention of right contention, the court observed that the applicant had the burden of showing that the representation of its interest was inadequate, citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10, 92 S.Ct. 630, 636 n.10, 30 L.Ed.2d 686 (1972), and *Pennsylvania v. Rizzo*, 530 F.2d 501, 505 (3d Cir.), *cert. denied*, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976). Noting that there was no allegation of incompetency of counsel, the court held that the Hartford had not shown that plaintiff would "fail to present all relevant facts and law in an effective manner" and had not demonstrated "how its interests [would] be compromised by plaintiff's management of the trial."

In responding to the carrier's contention that at some time in the future plaintiff's counsel would attempt to compromise the compensation lien, the court observed that, at the stage then existing, both the plaintiff and the carrier were seeking the largest recovery possible, and the company could protect its interests in informal settlement negotiations. Plaintiff expressed no objection to the Hartford entering the case after either a verdict or a settlement had been reached.

With respect to permissive intervention under Rule 24(b), the district judge found that the Hartford's presence at trial might lead to the disclosure of the existence of workmen's compensation, possibly prejudicing plaintiff before the jury. An additional detriment was the probability of further delay in the trial date because of the addition of a new party. In view of these circumstances, the court exercised its discretion to deny permissive intervention. The insurer appeals the denial of both mandatory and permissive intervention.

■ Rule 24(a) permits a party to intervene as of right whenever it demonstrates an interest in the subject matter of the action that will not be "adequately represented by existing parties."[1] Although the language of the rule is ambiguous as to which party has the burden of showing the adequacy of representation, the district court was correct in placing that burden, however "minimal" it may be, on the proposed intervenor. *Trbovich v. United Mine Workers, supra* at 538 n.10, 92 S.Ct. at 636 n.10; *Pennsylvania v. Rizzo, supra* at 505.

■ A request for intervention, especially in diversity proceedings, brings to the fore some choice of law issues. Determining the scope of the intervenor's interest will often require an inquiry into state law. But the timing and manner of the interven-

---

1. The text of Rule 24(a) reads in pertinent part: "Upon timely application anyone shall be permitted to intervene in an action:

. . . . . .

(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

tion is purely a matter of federal law. *See McDonald v. E. J. Lavino Co.,* 430 F.2d 1065, 1070 (5th Cir. 1970). *See generally* 7A C. Wright & A. Miller, Federal Practice & Procedure § 1905, at 475–76 (1972). Thus, we must first determine what interest the Hartford has under state law and, second, whether, as a matter of federal law, that interest is being adequately represented by existing parties.

The Hartford is obligated to make payments under the Pennsylvania Workmen's Compensation Act. Pa.Stat.Ann. tit. 77, §§ 1–1031 (Purdon 1952 & Supp.1979), and whatever right of recoupment is available to the carrier necessarily flows from the same legislation. Both plaintiff and the Hartford agree, therefore, that the insurer's right of subrogation is dependent upon, and expressed by, Pennsylvania law, particularly § 671 of tit. 77.

That section provides that when the injury is caused by a third party, the employer or his insurer is subrogated to the rights of the employee, his estate, or his dependents against the third party "to the extent of the compensation payable." *Id.* § 671 (Supp. 1979). Reasonable attorneys' fees are to be prorated between the employer and the employee or his representative. *Id.*

The subrogation provision confers no right on the employer to bring suit in his own name against a third party when an action has already been commenced by the injured employee or his representative. *See Pennsylvania Turnpike Commission v. United States Fidelity & Guaranty Co.,* 343 Pa. 543, 548, 23 A.2d 416, 418–19 (1942); 1 A. Barbieri, Pennsylvania Workmen's Compensation and Occupational Disease § 5.46(1), at 159 (1975). Moreover, the right of the subrogee to dictate the course of the employee's lawsuit has been severely curtailed by the Pennsylvania courts. In *Workmen's Compensation Appeal Board v. Del Vecchio,* 23 Pa.Cmwlth. 244, 351 A.2d 691 (1976), for example, the Pennsylvania Commonwealth Court rejected a claim by an employer and

its insurance carrier that they had a right to participate in the selection of counsel to prosecute the third-party claim, as well as a right to participate in the fee agreement. The court held that "the claim against, and damages received from, third parties are the workman's and his alone." *Id.* at 248, 351 A.2d at 693. The insurance company's only right in the fund is by way of subrogation.[2] *See also Furia v. City of Philadelphia,* 180 Pa.Super. 50, 58, 118 A.2d 236, 240 (1955) ("The [employer's] only right in the fund created by the [employee's] independent action was by way of subrogation. . . . The [employee] in this case had the right to select and employ his own counsel to represent him in a cause of action which was his and his alone.") (citations omitted). Even the subrogation interest is confined, requiring an equatability between the obligation of the compensation payer and that of the third-party tortfeasor. "The two funds [must] satisfy the same duty, liability or obligation to the same person." *Anderson v. Borough of Greenville,* 442 Pa. 11, 16, 273 A.2d 512, 515 (1971).

Although the employer's subrogated rights are obviously quite restricted, whether he has a sufficient interest to allow intervention in a state proceeding has not been decided by any Pennsylvania appellate decision. One old case has suggested, in dictum, that intervention would lie. *See Smith v. Yellow Cab Co.,* 288 Pa. 85, 89, 135 A. 858, 860 (1927). *See also* 6 Goodrich-Amram 2d § 2002(a): 12.1 (1977). For purposes of this case, we will assume that an interest sufficient to permit intervention under state procedures exists, and also assume that the employer possesses at least some inchoate interest in the litigation against the third-party tortfeasor so as to permit intervention as a federal matter.

In passing upon the motion for intervention, the district court properly examined the adequacy of the representation as it might affect the employer's interest. This examination, a federal law matter, entails

---

2. Although the Commonwealth Court is an intermediate appellate court in Pennsylvania, it has jurisdiction over the initial appeal from Workmen's Compensation Appeal Board decisions and is, therefore, particularly experienced in that field. 42 Pa.Cons.Stat.Ann. § 763 (Purdon 1979).

looking to such factors as proof of collusion between the representative and the opposing party, any adverse interest between the applicant and the representative, and whether there is any indication that the representative has been less than diligent in prosecuting the litigation. *See Stadin v. Union Electric Co.*, 309 F.2d 912, 919 (8th Cir. 1962), *cert. denied*, 373 U.S. 915, 83 S.Ct. 1298, 10 L.Ed.2d 415 (1963).

On appeal, the Hartford advances two principal arguments. First, it asserts that plaintiff's "lackadaisical approach" to the lawsuit could jeopardize the carrier's interest in the compensation lien. Second, it suggests that the manner in which the judgment is formulated may also compromise its lien. We find no merit to either contention.

The first argument need not detain us long. The district court found that plaintiff's counsel was competent and that the carrier had not shown that its interest was being undermined. We find no error in the district court's evaluation.

The second assertion, however—the potential conflict between the intervenor and plaintiff—requires an examination of a Pennsylvania case, *Anderson v. Borough of Greenville, supra*, which held that where an employee's surviving dependents include a widow and children, only the widow's share would be subject to the subrogation lien. Although disputing the applicability of that case to the one at bar, the Hartford nevertheless argues that *Anderson* might offer plaintiff's counsel an incentive to increase the children's share at the expense of the widow (and, consequently, the subrogation fund). It also suggests that the *Anderson* rule might be applicable under New Jersey law as well, a consideration that may be relevant because the parties dispute, and the district court has yet to resolve, which state's law would control the distribution of a successful judgment for plaintiff.

Examination of the law in both Pennsylvania and New Jersey reveals that at this stage of the litigation, any concerns fueled by *Anderson* would be premature. Under Pennsylvania statutory law, beneficiaries of a death action award share according to the law of intestate distribution. 42 Pa.Cons. Stat.Ann. § 8301(b) (Purdon 1979). And that scheme must be followed whenever there are two classes of relatives, each of which suffered a pecuniary loss as a result of decedent's death. *See Seymour v. Rossman*, 449 Pa. 515, 519–21, 297 A.2d 804, 806–07 (1972). In this case, where the decedent is survived by a dependent widow and dependent children, the intestacy laws would control.

Under New Jersey law, assuming arguendo that some form of the *Anderson* doctrine would apply, the Hartford's fears have slightly more substance. In that state, the trial court is directed to apportion a lump sum award according to the needs of the various dependents. N.J. Stat. Ann. § 2A:31–4 (West Supp.1979). The response to this concern, as the district judge recognized, is to permit the Hartford to act in protection of its interests once the verdict has been reached.[3] Plaintiff's counsel has already agreed to abide by this approach. *Cf. The Etna*, 138 F.2d 37, 42 (3d Cir. 1943) (even after entry of judgment, insurer/subrogee is entitled to present claim to an interest in the undistributed fund created by the judgment).

At this point, therefore, the Hartford has not shown a conflict between itself and plaintiff. Moreover, should adequacy of representation become a problem, the carrier will have ample opportunity to protect its interests. Accordingly, the denial of the motion to intervene under Federal Rule of Civil Procedure 24(a) was not error.

The district judge exercised his discretion in rejecting intervention under Rule 24(b) where intervention is permissive. After reviewing the factors relied on by the district court in denying the motion, we find no abuse of discretion.

A careful reading of the record leads us to believe that, although ostensibly the dispute is over the adequacy of representation,

---

**3.** Of course, the Hartford should be given the opportunity to contest the applicability of *Anderson* to the facts of this case. We hold only that such an opportunity would be premature until the fund arising out of the tort action is created.

the real nub of the controversy may well be the legal fees payable if the Hartford recovers some or all of its subrogation. We reiterate that the Pennsylvania statute specifically requires that the employer or his insurance company bear a proportionate share of the attorneys' fees incurred in collection of the fund. Pa.Stat.Ann. tit. 77, § 671 (Purdon Supp.1979). And, as noted earlier, the *Del Vecchio* decision forecloses the right of the carrier to control the course of the third-party suit or to designate the attorney whose fees will be paid by the fund. The action of the district court, therefore, in denying intervention and the addition of another set of trial counsel, complied with Rule 24, and was also consistent with the Pennsylvania view on the proper relationship between the employee and the workmen's compensation insurance carrier in third-party litigation. Accordingly, the judgment of the district court will be affirmed.