Dorothy HOOTS, et al., Appellees,

v.

COMMONWEALTH OF PENNSYLVA-
NIA, et al., Save Our Schools, an unin-
corporated association, by its President
Linda Lafferty, Vice President Mary
Lou Weisner, and Robert Fuller, a mem-
ber thereof, A. S. DePaul, an individual,
Shelia Mack, an individual, and John T.
Daugherty, an individual, proposed in-
tervenors, Appellants.

No. 81–2732.

United States Court of Appeals,
Third Circuit.

Argued Dec. 18, 1981.

Decided Feb. 1, 1982.

James S. Liebman, New York City, Thomas J. Henderson, Pittsburgh, Pa., for appellees Dorothy Hoots, et al.

Linda R. Blumkin, Fried, Frank, Harris, Shriver & Jacobson, New York City, Anton W. Bigman, Pittsburgh, Pa., for appellee General Braddock Area School Dist.

Arthur J. Murphy, Jr., Arthur J. Murphy, Jr. & Associates, Pittsburgh, Pa., for appellants Save Our Schools et al.

Before GIBBONS, HUNTER and GARTH, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Save Our Schools, an unincorporated association, and certain individual taxpayers (collectively SOS), appeal from a denial of their motion to intervene as defendants in an action seeking injunctive relief against intentional racial segregation in drawing school district boundaries. We affirm.

The lawsuit in which SOS seeks to intervene is a 10 year old action brought by Dorothy Hoots, and others, against the Commonwealth of Pennsylvania, the State Board of Education and the Allegheny County Board of Education alleging intentional segregation in establishing the boundaries of certain central eastern Allegheny County public school districts. The procedural history of that case is long and tortuous, but its recitation is not necessary here. It is sufficient to note that the district court, having found intentional discrimination in establishing boundaries, ordered the creation of a new school district composed of the former districts of Churchill, Edgewood, Swissvale, General Braddock and Turtle Creek. *Hoots v. Pennsylvania*, No. 71–538 (W.D.Pa. April 28, 1981).

The court mandated that the newly created district be governed by an Interim Operating Committee which was to assume governance of the district no later than June 1, 1981. The component former districts would continue, in the meantime, to be governed by their respective boards. The court subsequently decided that it would review the progress in implementation at the close of June 1981 and it continued the existence of the former boards until that time.

On the evening of June 30, 1981, the last day of the school year, the directors of both the Churchill and Edgewood School Districts passed resolutions retroactively reducing their 1980–81 tax rates so as to disperse to their respective taxpayers funds held in the name of the former school districts.[1] On July 6, 1981 Hoots, *et al.*, and the General Braddock Area School District (GBASD) requested that the district court issue a temporary restraining order against the disposition of any surplus funds. The order was entered and, after a hearing on July 10, 1981, extended as a preliminary injunction. The parties thereafter submitted briefs; counsel for Churchill filing in support of the Churchill and Edgewood actions.

On August 10, 1981, SOS, an unincorporated association composed of property owners, and individual taxpayers and home owners, asserting an interest in the quality of their children's education and in the possible return of their tax monies, sought to intervene on the issue of whether the preliminary injunction should be made permanent. Hoots *et al.* and GBASD resisted the application.

The district court denied leave to intervene. *Hoots v. Pennsylvania*, No. 71–538 (W.D.Pa. Oct. 1, 1981). Chief Judge Weber decided that the applicants, as residents and taxpayers, had a direct interest in the outcome of the action and that their interests would be effectively impaired if a permanent injunction issued. They had not demonstrated, however, that their interest was not adequately represented by an existing party, Churchill. The court, therefore, de-

---

1. The remaining three former districts ended their year with deficits.

nied an intervention as of right under Fed. R.Civ.P. 24(a)(2). The applicants' motion for permissive intervention under Fed.R. Civ.P. 24(b)(2) was also denied because the questions of law and fact presented were identical to those already heard and briefed, and intervention would only be a duplication of effort.[2]

SOS argues that it is entitled to intervene as of right because the Solicitor of the former Churchill district does not adequately represent its interests. Alternatively, SOS alleges that the district court abused its discretion by refusing permissive intervention under Fed.R.Civ.P. 24(b)(2). Both contentions are meritless.

The parties agree that SOS's interests will be effectively determined in the injunction proceedings. The only question for purposes of applying Rule 24(a)(2), therefore, is whether these interests are being adequately represented by Churchill.

The burden, however minimal after *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636, n. 10, 30 L.Ed.2d 686 (1972), is on the applicant for intervention to show that his interests are not adequately represented by the existing parties. *Olden v. Hagerstown Cash Register, Inc.,* 619 F.2d 271 (3d Cir. 1980) (*per curiam*). *See Commonwealth of Pennsylvania v. Rizzo,* 530 F.2d 501, 505 (3d Cir.), *cert. denied sub nom. Fire Officers Union v. Pennsylvania,* 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976). This burden may be discharged in two ways. The applicant may demonstrate that its interests, though similar to those of an existing party, are nevertheless sufficiently different that the representative cannot give the applicant's interests proper attention. *See National Farm Lines v. ICC,* 564 F.2d 381 (10th Cir. 1977);

*Nuesse v. Camp,* 385 F.2d 694 (D.C.Cir. 1967); *Holmes v. Government of Virgin Islands,* 61 F.R.D. 3 (D.V.I.1973). Alternatively, the applicant may establish collusion between the representative and an opposing party, or an indication that the representative has not been diligent in prosecuting the litigation. *Olden, supra,* 619 F.2d at 274–75. *See generally, Rizzo, supra,* 530 F.2d at 506; *Nuesse v. Camp,* 385 F.2d 694, 702–03 (D.C.Cir.1967).

Churchill's desired goal is precisely that of SOS: to effectuate a refund of taxes. There is no dissimilarity of interests on the refund issue. The Churchill School Board, when active, admittedly tempered its obligations to the pocketbooks of taxpayers with its obligations to the general public—especially school children and their parents, and therefore no identity of interest could have been exhibited between Churchill and SOS at that time. But since the court ordered merger, Churchill's only remaining motive is to maximize the taxpayers' refund. For all purposes relevant to the issues presented in this appeal, Churchill represents the taxpayers in the former school district. There are no differences in interest between Churchill and SOS at this stage of the proceedings.[3] SOS would also be entitled to intervene despite identity of interest if it could establish that Churchill's representation was ineffectual or not diligent. But SOS does not allege substandard performance of Churchill or its counsel.[4] Therefore it has not discharged its burden of establishing that Churchill's representation of its interests was not adequate. The court did not err in holding that SOS may not intervene as of right.

We turn next to the claim that the trial court abused its discretion by not al-

---

**2.** The district court questioned the timeliness of the application. Whether untimeliness alone would justify the court's denial of the motion need not be decided since we approve the other grounds relied upon.

**3.** Differences may develop, if Churchill decides not to appeal an adverse decision. In that event, SOS may renew its motions to intervene for purposes of appeal.

**4.** SOS does complain that its representation is defective because it cannot exert any control over the Solicitor of Churchill since it did not retain him. Nothing turns on that. If inadequacy of representation were to depend on the accountability of the representative's counsel to the applicant, then the requirement that an existing party vicariously represent the applicant would rarely be fulfilled.

lowing permissive intervention. It is true that a denial of intervention as of right does not automatically mandate a denial of permissive intervention. *See McKay v. Heyison*, 614 F.2d 899, 906 (3d Cir. 1980). Nevertheless, where, as here, the interests of the applicant in every manner match those of an existing party and the party's representation is deemed adequate, the district court is well within its discretion in deciding that the applicant's contributions to the proceedings would be superfluous and that any resulting delay would be "undue."

The judgment appealed from will be affirmed.