COURT OF APPEALS
DECISION
DATED AND FILED

July 7, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP1838**

**STATE OF WISCONSIN**

Cir. Ct. No. 2022CV2446

**IN COURT OF APPEALS
DISTRICT IV**

RISE, INC. AND JASON RIVERA,

    PLAINTIFFS,

  V.

WISCONSIN ELECTIONS COMMISSION,

    DEFENDANT-RESPONDENT,

MARIBETH WITZEL-BEHL,

    DEFENDANT,

WISCONSIN STATE LEGISLATURE,

    INTERVENOR,

MICHAEL WHITE AND EVA WHITE,

    PROPOSED-INTERVENORS-APPELLANTS.

APPEAL from an order of the circuit court for Dane County: JUAN B. COLÁS, Judge. *Affirmed.*

Before Blanchard, P.J., Kloppenburg, and Graham, JJ.

¶1 BLANCHARD, J. This is an appeal from a special proceeding involving a request for intervention.[1] Michael White and Eva White appeal the denial by the Dane County circuit court of their motion to intervene in a suit brought by nonprofit Rise, Inc. and Jason Rivera ("Rise") against the Wisconsin Elections Commission and the City of Madison clerk.

¶2 In the underlying case, Rise seeks a declaratory judgment regarding one issue of statutory interpretation: the correct definition of "the address of a witness" that is required to be included in the witness certification accompanying absentee ballots in a Wisconsin election.

¶3 We conclude that the circuit court correctly applied WIS. STAT. § 803.09(1) (2020-21) to deny the Whites intervention as of right because they fail to overcome multiple presumptions that existing parties in the case will adequately represent the Whites' interests.[2] We also conclude that the court did not erroneously exercise its discretion in denying the Whites permissive intervention under § 803.09(2). Accordingly we affirm the order denying the Whites' motion to intervene in its entirety.

---

[1] A motion to intervene initiates a special proceeding and a circuit court order denying intervention is a final order in that proceeding, providing a basis for appeal regardless of the status of the underlying action that the movant seeks to join as an intervenor. *See* **Wengerd v. Rinehart**, 114 Wis. 2d 575, 582, 338 N.W.2d 861 (Ct. App. 1983).

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

## BACKGROUND

¶4    The following is pertinent legal context. An elector's completion of an absentee ballot must be witnessed and, as proof of that, an envelope containing a ballot is required to contain a written certification by a witness. WIS. STAT. § 6.87(2), (4)(b)1. The required witness certification must include the witness's address. *Id.* In 2015 Wisconsin Act 261, the legislature enacted § 6.87(6d), which provides that a witness certification that "is missing the address of a witness" "may not be counted." Neither § 6.87(2) nor § 6.87(6d) defines the word "address." Regarding permitted activities of clerks in this context, § 6.87(9) provides in pertinent part, "[i]f a municipal clerk receives an absentee ballot with an improperly completed [witness] certificate or with no certificate, the clerk may return the ballot to the elector … whenever time permits the elector to correct the defect and return the ballot."

¶5    In October 2016 the Commission, responding to the enactment of WIS. STAT. § 6.87(6d), sent guidance to local clerks statewide that contained two positions pertinent to the arguments made by the parties in this appeal. First, the "address" on the witness certification must include the following information: street number, street name, and municipality name. Second, local clerks were to "take corrective actions in an attempt to remedy a witness address error." Options for corrective actions included making corrections to a witness address directly on the certificate envelope, so long as the clerk was "reasonably able to discern" "from outside sources" the content of "any missing information." For example, the guidance provided, a clerk could use "lists or databases at his or her disposal to determine the witness's address." Other options to attempt to complete an address included directly contacting voters and "offer[ing] suggestions for correcting the certificate envelope to ensure the voter's absentee ballot will not be rejected."

3

¶6     One of the Whites' arguments for intervention in the Dane County case rests on the outcome of a separate legal action that the Whites and others successfully pursued against the Commission in the Waukesha County circuit court.  The Waukesha case involved the options clerks have under the law to correct address information on witness certifications.  The Waukesha County case was resolved before the Whites moved to intervene in the Dane County case.  We now summarize the Waukesha County case.

¶7     The Whites' position in the Waukesha County case was that the aspect of the Commission's guidance that called for clerks to use various options to attempt to complete witness certifications violated the intent of pertinent Wisconsin statutes.  *White v. WEC*, Waukesha Cnty. No. 2022CV1008, Compl. (Waukesha Cnty. Cir. Ct. July 12, 2022).  As the Waukesha County circuit court explained in addressing the parties' arguments, the issue was "whether Wisconsin law authorizes clerks to insert address information in the witness certification on an absentee ballot and, if not, whether the guidance [that the Commission] provides mandating such actions can be tolerated."  *Id.* (hearing held Sept. 7, 2022)

¶8     The Waukesha County circuit court agreed with the Whites and the other plaintiffs, entering an order enjoining the Commission from disseminating the following guidance:  (1) clerks "can add information to absentee ballot witness certifications in any form," (2) clerks may take actions contrary to the terms of WIS. STAT. § 6.87(9), quoted in pertinent part above; or (3) clerks "have the duty or ability to modify or add information to incomplete absentee ballot certifications."  *White*, No. 2022CV1008 (order issued Oct. 3, 2022).  The order granting final judgment states that it "applies to portions" of the Commission's guidance "that contain[] or indicate[] that municipal clerks or local election

4

officials can modify or add information to absentee ballot certifications." *Id.* The order also states: "Nothing herein is intended, nor shall be construed, to enjoin [the Commission] from issuing or distributing its guidance regarding the definition of 'address' as used in WIS. STAT. § 6.87." *White*, No. 2022CV1008 (order issued Oct. 3, 2022).

¶9     No party appealed the final order of the Waukesha County circuit court.

¶10     Shortly after the Waukesha County circuit court made its oral ruling and shortly before the court entered its final order, Rise initiated the Dane County case underlying the special proceeding here, naming as defendants the Commission and the Madison clerk. Rise does not challenge the ruling in the Waukesha County case involving how witness certifications may or may not be corrected or completed by clerks or others. Instead, the Dane County case is about the correct definition of the phrase "the address of a witness" in WIS. STAT. § 6.87(6d) and related statutory references. More specifically, Rise seeks a declaratory judgment (and matching injunctive relief) containing the following closely related propositions: that "address" in this context means "a place where a witness may be communicated with"; that certifications "that include portions of a witness's address are sufficient under WIS. STAT. § 6.87(2) if a local clerk can reasonably discern where a witness may be communicated with"; and that "[a]n otherwise valid ballot from which a local clerk can reasonably discern where a witness may be communicated with is properly completed for purposes of WIS. STAT. § 6.87(9)."

¶11     The Wisconsin State Legislature and the Whites filed motions to intervene as defendants in the Dane County case. The Commission (represented

by the state Department of Justice) opposed intervention by the Whites, but it did not oppose intervention by the Legislature. The circuit court granted the Legislature permissive intervention based on WIS. STAT. § 803.09(2), without deciding whether it could intervene as of right under § 803.09(1).[3]

¶12 After considering the arguments of the parties, the circuit court in a written order denied the Whites' motion for intervention, either as of right or on a permissive basis. The Whites appeal that order. No party raises an issue about intervention by the Legislature in the Dane County case. The city clerk is not a party to this appeal. Our review is limited to the challenged intervention rulings of the circuit court in the special proceeding denying the Whites's motion and we do not consider subsequent events in the Dane County case.

## DISCUSSION

### I. Intervention of Right

#### A. Legal standards

¶13 We review de novo a circuit court order addressing a motion to intervene as of right under WIS. STAT. § 803.09(1). *Helgeland v. Wisconsin Muns.*, 2008 WI 9, ¶41, 307 Wis. 2d 1, 745 N.W.2d 1.

¶14 WISCONSIN STAT. § 803.09(1) provides:

> Upon timely motion anyone shall be permitted to intervene in an action when the movant claims an interest relating to the property or transaction which is the subject of the action and the movant is so situated that the

---

[3] The Legislature also argued that it is entitled to intervene under WIS. STAT. § 803.09(2m), but the circuit court did not address that separate ground.

disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest, unless the movant's interest is adequately represented by existing parties.

¶15 Our supreme court has explained that this requires that the movant show that four criteria are met: (1) the movant made a timely application; (2) the movant has an interest relating to the subject of the action; (3) disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest; and (4) the movant's interest is not adequately represented by existing parties. *Helgeland*, 307 Wis. 2d 1, ¶¶38-39. While a "movant must meet" each of the four criteria, the criteria "need not be analyzed in isolation from one another, and a movant's strong showing with respect to one [criterion] may contribute to the movant's ability to meet" others. *Id.*, ¶39 (footnotes omitted).

¶16 The *Helgeland* court explained further how the four criteria are to be considered:

> The analysis is holistic, flexible, and highly fact-specific. A court must look at the facts and circumstances of each case "against the background of the policies underlying the intervention rule." A court is mindful that WIS. STAT. § 803.09(1) "attempts to strike a balance between two conflicting public policies." On the one hand, "[t]he original parties to a lawsuit should be allowed to conduct and conclude their own lawsuit...." On the other hand, "persons should be allowed to join a lawsuit in the interest of the speedy and economical resolution of controversies."

*Id.*, ¶40 (footnotes omitted).

### B. Analysis

#### 1. *Timely application.*

¶17    The first criterion is not disputed; the intervention motion was timely filed.

#### 2. *Interest related to the subject of the litigation.*

¶18    The second criterion which the Whites must meet is that they have an interest that is sufficiently related to the subject of the Dane County case.[4]  We note that the identification of a movant's asserted related interest will affect the analysis of the third and fourth criteria as well, because all three of these criteria are defined in part by the movant's asserted interest.

¶19    We now explain why we reject Whites' arguments as to the first of the two related interests they assert and why we question whether the Whites have fully developed an argument as to the second related interest.  In the interest of judicial efficiency, however, we assume without deciding that the Whites' second asserted related interest satisfies the second criterion.

¶20    In addressing the related-interest criterion, courts "employ a 'broad[], pragmatic approach,'" under which "'the interest sufficient to allow the intervention'" is to be viewed "'practically rather than technically.'"  **Helgeland**, 307 Wis. 2d 1, ¶43 (quoted source omitted).  Courts primarily employ this

---

[4] For ease of discussion, we sometimes speak in terms of a single related "interest," but of course a movant may attempt to identify multiple interests.  As will be seen, the Whites argue that they have two interests related to the subject of the Dane County case that support intervention as of right.

criterion as "'a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Id.*, ¶44 (quoted source omitted).

¶21    At the same time, it weighs against intervention as of right when the movant's asserted interest "is only remotely related to the subject of the action." *Id.*, ¶45 (quoted source omitted). "There must be some sense in which the interest is 'of such direct and immediate character that the intervenor will either gain or lose by the direct operation of the judgment'" sought in the underlying action. *Id.* (quoted sources omitted). Further, a movant must identify a need "'to protect a right that would not otherwise be protected in the litigation.'" *Id.* (quoted source omitted). We note that, in making these statements, our supreme court has interpreted WIS. STAT. § 803.09(1) to require that "the subject of the action" be closely tied to particular relief that existing parties and potential intervenors seek to obtain or to prevent in the underlying action.

¶22    The Whites argue that they have two interests that count in favor of intervention as of right because they are sufficiently related to the subject of the Dane County case: "preserving the 'functional result' of the relief [the Whites] obtained" in the Waukesha County case; and "preserving [the Whites'] right to vote in a lawful election," without having "unlawful absentee votes" "dilute" their lawful votes.[5]

---

[5] The Whites attempt to draw a distinction between those Wisconsin electors who use absentee ballots and those who vote in person at a polling place on election days. They apparently intend to suggest, albeit obliquely, that they have a special interest for purposes of intervention based on their assertion that they personally always vote in person. We fail to see what this distinction between lawful in-person voters and lawful absentee voters could add to a proper analysis, even when one assumes some potential validity to their vote-dilution theory that we discuss in the text below.

¶23    There is no merit to the Whites' asserted interest in preserving the relief they obtained in the Waukesha County case. They argue that Rise, in the Dane County case, "collateral[ly] attacks" the order in the Waukesha County case enjoining the Commission regarding what information clerks can add to witness certifications. In the same vein, in the special proceeding before the Dane County court the Whites contended that the relief sought by Rise in the Dane County case is "a competing injunction" to the relief that they obtained in the Waukesha County case. But, as the Waukesha County court expressly recognized, there is no competition whatsoever. The Waukesha court explained that it did not resolve the definition of "address" in this context, which is the only issue in the Dane County case. Indeed, as summarized above, the Waukesha County court identified the address-definition topic as falling outside the scope of its rulings. The Whites now attempt to label as merely "technical" the distinction between the issue of whether clerks can add information to certifications and the issue of what counts as an "address" on a valid certification. But the distinction is self-evident and complete. The Whites fail to identify a result of the Waukesha County case that they could hope to "preserve" through advocacy in the Dane County case.

¶24    On this issue, the Whites argue that both the Waukesha County case and the Dane County case address an "identical" question: "what does a witness need to write in the address line so that [the Commission] will accept the certification?" But that is the issue in the Dane County case only; it was not the issue in the Waukesha County case. The Waukesha litigation was entirely about whether and how clerks could modify certifications.

¶25    Both the Whites and the Legislature, in an amicus brief filed on appeal, direct us to opinions offered by Rise in its complaint in the Dane County case that confusion could result among electors who are "not aware of the

Waukesha court's decision" and that the relief Rise requests in the Dane County case would "restore the functional result of" the Commission's guidance. But these are simply opinions of Rise that it offers for context and do not represent a challenge to the results of the Waukesha County case.

¶26 For these reasons, the circuit court in this special proceeding correctly ruled that "preserving the relief the Whites won in the Waukesha [County] case is not a basis for intervention by right or by leave."

¶27 Turning to the Whites' dilution theory of related interest, the Whites provide thin legal support for this theory. We question whether the Whites have articulated a clear theory of vote dilution that fits this context. As best we can discern, the theory seems to be that accepting Rise's definition of "address" for absentee voter witnesses would, through some means left unexplained by the Whites, dilute lawfully cast votes with a greater number of unlawfully cast votes. There is some appeal in the Commission's argument that this "theory of harm through vote dilution does not amount to an actual, concrete injury that gives them a justiciable stake in" the Dane County case. We also note that the Whites fail to provide clear legal authority to support the vote-dilution theory.[6]

---

[6] We ignore positions taken by the Whites on this issue that are based on two different forms of improper citations to case law. We also remind counsel for the Whites of their obligations to properly cite to and discuss legal authorities.

First, on this issue the Whites rely extensively on a per curiam opinion of this court— putting aside the second per curiam opinion of this court that they separately cite on a different issue, *see infra* n.8. Of course, this violates WIS. STAT. RULE 809.23(3)(a), which provides that such opinions may not be cited in any court of this state as precedent or authority, except in limited circumstances that are not present here.

(continued)

¶28   Nevertheless, we assume without deciding that the vote-dilution theory could be a related interest that favors intervention under the required "holistic, flexible, and highly fact-specific" analysis. *See **Helgeland***, 307 Wis. 2d 1, ¶40 (footnotes omitted). More specifically, we assume that the Whites show that their asserted interest to avoid dilution of their lawful votes is, as ***Helgeland*** requires, "'of such direct and immediate character that'" the Whites "'will either gain or lose by the direct operation of the judgment'" sought by Rise, namely, that a witness's address in this context is a place where a clerk can reasonably discern where a witness may be communicated with. *See **id.***, ¶45 (quoted source omitted).

¶29   At the same time, however, as we explain below, even when this asserted interest is assumed to be a related interest that could support intervention, the complete failure of the Whites to show that they are not adequately represented by existing parties is dispositive. This is so in part because the vote-dilution theory as now presented by the Whites is weak. Therefore, the Whites cannot show that their asserted related interest rises to a level of strength that it could save

Second, in their opening brief the Whites rely on one paragraph in the lead opinion in ***Teigen v. Wisconsin Elections Commission***, 2022 WI 64, ¶25, 403 Wis. 2d 607, 976 N.W.2d 519, discussing a theory of "vote pollution" in the context of a standing issue, as if this paragraph has precedential value. However, that paragraph of the lead opinion does not have precedential value because no four justices in that fractured opinion expressed agreement with any point made in that paragraph. *Compare **id.***, ¶¶16-18, 25, 32-36 (lead op.) *with **id.***, ¶¶149 n.1, 159, 165-67 (Hagedorn, J., concurring); *see also **State v. Elam***, 195 Wis. 2d 683, 685, 538 N.W.2d 249 (1995) ("A general principle of appellate practice is that a majority of the participating judges must have agreed on a particular point for it to be considered the opinion of the court."). After the Commission on appeal makes and supports the point that the Whites' opening brief improperly fails to present the statements in the lead opinion in proper legal context, the Whites in their reply brief for the first time cite to *different* paragraphs in one of the concurrences to ***Teigen*** that do not explicitly discuss the theory of "vote pollution." Not only do those paragraphs not explicitly discuss "vote pollution," this argument about the ***Teigen*** concurrence comes too late. *See **A.O. Smith Corp. v. Allstate Ins. Cos.***, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998) (we generally ignore arguments raised for the first time in a reply brief). Further, we need not resolve this issue to reach our dispositive conclusion, as explained in the text.

their complete failure to meet their obligation under the fourth criterion to show that their interests are not sufficiently protected by existing parties. *See id.*, ¶39 ("a movant's strong showing with respect to one requirement may contribute to the movant's ability to meet other requirements as well.").

### 3. *Disposition may impair or impede ability to protect interest.*

¶30    We take the same approach regarding the third criterion as with the second, which is a closely related consideration. While we question the nature of the second interest asserted by the Whites as they describe it, we assume without deciding that the Whites could show based on the vote-dilution theory that disposition of the Dane County case may as a practical matter impair or impede their ability to protect their asserted interest.

### 4. *Interest not adequately represented by existing parties.*

¶31    We conclude that the circuit court correctly determined that the Whites are not entitled to intervene as of right because the Commission and the Legislature "adequately represent" their asserted interest in avoiding dilution of their votes. The Whites do not overcome multiple presumptions that these two existing parties will adequately represent their asserted interests in resolving the single legal issue in the Dane County case.

¶32    Our supreme court has explained the following regarding the fourth criterion:

> We will ordinarily deem a party's representation of a potential intervenor adequate (1) if there is no showing of collusion between the representative and the opposing party; (2) if the representative's interest is not adverse to that of the proposed intervenor; and (3) if the representative does not fail in the fulfillment of its duty. The movant requesting intervention as a matter of right has the burden

> of establishing inadequate representation. While the burden of proving inadequate representation generally "should be treated as minimal," …, this requirement "cannot be treated as so minimal as to write the requirement completely out of the rule."

*Helgeland v. Wisconsin Municipalities*, 2006 WI App 216, ¶20, 296 Wis. 2d 880, 724 N.W.2d 208 (quoted sources omitted).

¶33 For the following reasons, the Whites do not carry their burden, even though the burden is minimal.

¶34 The Whites fail to show any of the following: collusion between Rise, on the one hand, and either the Commission or the Legislature, on the other hand; that the Whites' asserted interest, particularly as it could affect the nature of the relief requested by existing parties from the Dane County court, is adverse to that of the Commission or the Legislature; or that the Commission or the Legislature could not or would not fulfill their shared duties to advocate for what those entities view as the correct application of the statutes to the narrow legal issue in the Dane County case. We now expand on some of these points and add others.

¶35 The Commission points out that, as the Dane County court determined, the positions of the Commission and the Legislature are aligned with the position that the Whites take on the merits of the Dane County case: all advocate that the Dane County court reject the relief sought by Rise and thus maintain as the status quo the Commission's interpretation of "address." The Whites do not develop a substantive reply.[7] This concedes the point, consistently

---

[7] In an undeveloped argument, the Whites assert that there have been "clear differences in argument, strategy, and goals" between the Legislature and the Whites, but they fail to direct us to record evidence of differences that could matter to the protection of their asserted interest.

with the statement quoted above from ***Helgeland***, that ordinarily representation is adequate if the representative's interest in the underlying action is not adverse to that of the proposed intervenor. *See **United Coop. v. Frontier FS Coop.***, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578. Thus, two parties, not just one, are committed to pursuing the same position as the Whites in support of their mutually desired outcome. *See **Helgeland***, 307 Wis. 2d 1, ¶90 ("[A]dequate representation is ordinarily presumed when a movant and an existing party have the same ultimate objective in the action."). Notably, the Commission and the Legislature are pursuing this shared goal in a case involving a well-defined issue of statutory interpretation, and the *only* relief that the Whites seek to "gain … by the direct operation of the judgment" in the Dane County case is already sought by existing parties. *Id.*, ¶45.

¶36 Further, the presumption of adequate representation is magnified here by yet another presumption: the fact that the Commission, as represented by the state department of justice, is "charged by law" with "'acting on behalf of a constituency that it represents'" in this area of the law. *Id.*, ¶91 n.81 (quoting ***Prete v. Bradbury***, 438 F.3d 949, 956 (9th Cir. 2006)). The court in ***Helgeland*** also cites ***Curry v. Regents of the University of Minnesota***, 167 F.3d 420, 423 (8th Cir. 1999), for the proposition that "when a government entity is a party and the case concerns a matter of sovereign interest, the government is presumed adequately to represent the interests of the public." ***Helgeland***, 307 Wis. 2d 1, ¶91 n.81. The Whites do not dispute that both the Commission and the state department of justice are charged by law with the duty of representing the rights of electors so that all may enjoy the benefits of the correct application of the laws governing elections.

15

¶37     The Whites rely heavily on the result in ***Wolff v. Town of Jamestown***, 229 Wis. 2d 738, 601 N.W.2d 301 (Ct. App. 1999), but they inaccurately present one statement in ***Wolff*** and more generally fail to address its specific reasoning.

¶38     In ***Wolff***, we determined that a town met the requirements for intervention as of right in a zoning dispute between a county and landowners, even though the town and the county were "not wholly adverse parties" and "would offer similar arguments in support of their mutually desired outcome." ***Wolff***, 229 Wis. 2d at 748.  In support of its ruling that the town showed that it was not adequately represented by the county, the ***Wolff*** court cited a federal appeals court opinion, ***Nuesse v. Camp***, 385 F.2d 694 (D.C. Cir. 1967).  ***Wolff***, 229 Wis. 2d at 748.  In ***Nuesse***, a state banking commissioner proposed to intervene in an action involving federal and state banking practices and regulations.  ***Wolff***, 229 Wis. 2d at 748; ***Nuesse*** at 385 F.2d at 703.  In ***Wolff***, we noted that the court in ***Nuesse*** determined that the banking commissioner was "'in a better position [than existing parties] to provide full ventilation of the legal and factual context'" of that banking dispute, creating "'a serious possibility'" that the commissioner's interest may not be adequately represented by the existing parties.  ***Wolff***, 229 Wis. 2d at 748 (quoting ***Nuesse***, 385 F.2d at 703).  Following the persuasive reasoning in ***Nuesse***, we noted that the county and the town in ***Wolff*** had "significantly different" interests, in multiple respects, which created "a serious possibility" that the county would not adequately represent the town's interests in the litigation.  ***Wolff***, 229 Wis. 2d at 748-50 & n.2.

¶39     The first problem with the Whites' argument based on ***Wolff*** is that they make inaccurate use of one of its passages.  They represent in their briefing that the court in ***Wolff*** stated that representation can be inadequate "even when

16

there 'would be *no difference* "in how the case is *substantively* presented to the Court."' (Emphasis in briefing.) In fact, however, this passage in *Wolff* is the court's summary of *the position of the party opposing intervention*, and the court goes on to explain why the court questioned that position. *See id.* at 748-50 (explaining reasons for the court to *doubt* that there would be no difference between the substantive presentations of the town and the county).

¶40 Further, and more important, the facts of *Wolff* and of *Nuesse* bear no resemblance to the facts here. The banking commissioner in *Nuesse* was expected to bring special knowledge and expertise to allow "'full ventilation of the legal and factual context'" of a case involving national and state banking laws and practices. Similarly, the town in *Wolff* was expected to represent the particular interests of town residents and taxpayers in a zoning dispute that the town could not rely on the county to adequately represent, including the town's interests in a lawsuit settlement that might be excessive. *See Wolff*, 229 Wis. 2d at 748-50. Here, in contrast, the Dane County case involves a single issue of statutory interpretation, and the Whites fail to identify a category of knowledge, expertise, or perspective that they would bring that would not be adequately represented by the Commission and the Legislature, given the nature of the issue in the case. That is, "'[f]ull ventilation'" of the legal issue here does not require participation by the Whites.

¶41 The Whites make the broad assertion that "the Legislature has obvious political interests that could affect its approach to this case that the Whites

17

do not necessarily share."[8] But they do not develop an argument from this assertion that affects a proper analysis. In addition, this particular point does not counter the presumption that the Commission will adequately represent their asserted interest.

¶42    The Whites suggest that the Commission, because it was a defendant in the Waukesha County case and is also a defendant in the Dane County case, cannot adequately represent their interest in the Dane County case. We have already explained the complete lack of overlap between the two cases, which negates this argument.

¶43    Both the Whites and the Legislature emphasize two broad, unobjectionable propositions: the right of a qualified elector to vote is an individual right, not a collective right; and the Legislature has the perspective of a branch of state government, representing interests that include its legislative authority, while the Commission is, in the words of the Legislature, "an arm of the State." Based on these general propositions, the Whites and the Legislature assert that the Legislature and the Commission are both incapable of adequately representing the legitimate interests of all individual qualified electors, including the Whites, in the Dane County case. This is a highly abstract, undeveloped argument that is not supported by legal authority cited by either the Whites or the Legislature and is not tied to the standard articulated in *Helgeland*. We reject it on those grounds.

---

[8] On this issue regarding the fourth criterion, as with the Whites' discussion of the second criterion, we ignore any argument that is based on their improper citation to two per curiam opinions of this court. *See supra* n.6.

¶44 The Whites quote as persuasive authority the statement of a federal appeals court that intervention by individual citizens may be appropriate in the following circumstance: a government agency that is an existing party is "charged by law with representing the public interest of its citizens" and would have to "shirk[] its duty" to those citizens if it were to advance a "more narrow and 'parochial' financial interest [of the proposed intervenor] not shared by" all of the agency's citizens. *See **Fund for Animals Inc. v. Norton***, 322 F.3d 728, 737-38 (D.C. Cir. 2003) (permitting intervention as of right for a ministry of Mongolia in an environmental group's challenge to U.S. agency's listing of a particular sheep breed as merely threatened because the Mongolian ministry had a related interest, as the agency responsible for implementing the country's hunting program for tourists; relief sought by plaintiffs included listing of the breed as endangered in Mongolia, cancellation of existing permits to import trophies, and a ban on new permits). But here there are existing parties who are not adverse in the slightest to the outcome that the Whites seek, which means that the Whites fail to show that, in the words of **Helgeland**, "the representative's interest is adverse to that of the proposed intervenor." *See **Helgeland***, 307 Wis. 2d 1, ¶87. Unlike the Mongolian ministry's concerns in **Fund for Animals**—that the executive branch of the U.S. government would permit the court to grant relief that failed to consider, and take into account as appropriate, the Mongolian ministry's "narrow" and "parochial" concerns regarding management and hunting of that country's breed of sheep—the Whites here are entirely aligned with the Commission and the Legislature in the Dane County case on the outcome they seek under pertinent statutory interpretation.

## II. Permissive Intervention

### A. Legal standards

¶45    In pertinent part, WIS. STAT. § 803.09(2) provides:

> Upon timely motion anyone may be permitted to intervene in an action when a movant's claim or defense and the main action have a question of law or fact in common.…  In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

¶46    We review a decision regarding a motion for permissive intervention under an erroneous exercise of discretion standard. *Helgeland*, 307 Wis. 2d 1, ¶120.  A discretionary decision will be affirmed as long as the circuit court examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Industrial Roofing Servs., Inc. v. Marquardt*, 2007 WI 19, ¶41, 299 Wis. 2d 81, 726 N.W.2d 898.

¶47    WISCONSIN STAT. § 803.09(2) requires circuit courts to consider three factors in making its discretionary determination.  A person "may," in the discretion of the court, "be permitted to intervene in an action":

1. "Upon timely motion";

2. When "movant's claim or defense and the main action have a question of law or fact in common"; and

3. After the court "[i]n exercising its discretion" considers "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

20

*See* WIS. STAT. § 803.09(2); *see also* **Helgeland**, 307 Wis. 2d 1, ¶120 ("As the text of []§ 803.09(2) itself makes clear, the circuit court has discretion to decide whether a movant may be permitted to intervene when the movant's claim or defense and the main action have a question of law or fact in common."); *City of Madison v. WERC*, 2000 WI 39, ¶11 n.11, 234 Wis. 2d 550, 610 N.W.2d 94 ("While intervention as a matter of right requires a person to be necessary to the adjudication of the action, permissive intervention requires a person to be merely a proper party."). We interpret **Helgeland** and **City of Madison** to construe § 803.09(2) to mean that a circuit court must consider the three factors to determine whether a person is eligible to be considered for permissive intervention, which is then denied or granted in the discretion of the court. We do not interpret the statute, or any statement in **Helgeland** or **City of Madison**, to mean that all persons who meet the three factors must be permitted to intervene.

¶48     Here the Dane County circuit court, in explaining its decision to deny permissive intervention, addressed the three factors and deemed them satisfied: "the Whites['] claims and defenses are related in law and fact to the main action"; they filed their motion to intervene "at the earliest stage of the proceedings (the time for the named defendants to file an answer has not yet run); and their intervention will not unduly delay or prejudice the litigation of the original action."

¶49     Having concluded that the Whites met the three factors, the circuit court then turned to other factors weighing against permissive intervention. "[T]he interests of the Whites are not so specific or unique, or inadequately represented, that their intervention is needed to protect their interests, to ensure that the issues presented are fully litigated[,] or to assist the court." Regarding the adequate representation point, the court determined that the Commission, the city

21

clerk, and the Legislature "adequately represent" the Whites' asserted dilution interest, in part because the admissions and denials in Whites' proposed answer and the Legislature's answer "are substantively the same." In addition, the "affirmative defenses alleged by the Whites also can be adequately represented [by] the Legislature and by the Elections Commission and Clerk of the City of Madison …."

¶50 We conclude that the circuit court examined the relevant facts, applied a proper standard of law, and used a demonstrated rational process to reach a conclusion that a reasonable judge could reach in denying permissive intervention. For reasons explained above in addressing intervention as of right, we conclude that the court could reasonably reach the conclusion that the Whites had absolutely nothing of value to add to the Dane County case. In other words, the logic of the court's ruling was not simply that the Whites failed to meet the fourth criterion of the test under WIS. STAT. § 803.09(1). It is that they came so far from meeting the criterion that nothing beneficial would be accomplished by permitting them to intervene under § 803.09(2). Under this view, which we consider reasonable based on the record and the arguments of the parties, the court exercised its discretion to, in the words of *Helgeland*, "allow[] the original parties to [the] lawsuit to conduct and conclude their own lawsuit." *Helgeland*, 307 Wis. 2d 1, ¶44. The circuit court could reasonably determine that the Whites' contributions to the proceedings would be completely superfluous and therefore only wasteful of the time and attention of the existing parties and the court.

¶51 For the first time in their reply brief, the Whites argue that, because the circuit court made a determination that intervention by the Whites would "not unduly delay or prejudice the litigation of the original action," therefore the court could not logically rest on the proposition that the Whites' contributions to the

proceedings would be superfluous and therefore any and all delay resulting from intervention would be wasteful. *See **Hoots v. Pennsylvania***, 672 F.2d 1133, 1136 (3d Cir.1982) ("[W]here … the interests of the applicant in every manner match those of an existing party and the party's representation is deemed adequate, the district court is well within its discretion in deciding that the applicant's contributions to the proceedings would be superfluous and that any resulting delay would be 'undue.'"). First, the White's argument comes too late. We need not address arguments raised for the first time in a reply brief. ***A.O. Smith v. Allstate Ins. Cos.***, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998). Second, even if we were to address the argument, we do not interpret the circuit court to have made a determination that intervention by the Whites would not result in any delays at all, even short delays. Instead, the court effectively made the following determinations: there would not be significant ("undue") delays if the Whites were allowed to intervene, but *any* amount of resulting delay, even the ordinary and relatively short delays that could be expected to result through their participation, should be avoided given the complete lack of value in the Whites' participation. There is a reasonable basis in the record for these implicit determinations.

¶52 The Whites argue that the circuit court committed legal error because, having determined that the Whites met the three required considerations, the court was obligated to grant the motion. We disagree. The Whites do not cite legal authority that supports the proposition that a circuit court must exercise its discretion in favor of permissive intervention whenever a person files a timely motion, the person states a claim or defense that contains an issue of law or fact in common with the underlying action, and intervention will not "unduly delay or

prejudice the adjudication of the rights" of existing parties. Further, as referenced above, we do not construe WIS. STAT. § 803.09(2) in that manner.

¶53 The Whites quote a passage in **Helgeland** in which our supreme court rejected a challenge to a circuit court's denial of a motion for permissive intervention. *See* **Helgeland**, 307 Wis. 2d 1, ¶126. In rejecting the challenge, the supreme court explained that the circuit court relied on the factor of "delay, a factor explicitly specified in WIS. STAT. § 803.09(2)." *See* **Helgeland**, 307 Wis. 2d 1, ¶126. But this is not a statement that a circuit court is obligated to cite only "factor[s] explicitly specified" in § 803.09(2) in order to properly deny a motion for permissive intervention.

¶54 In a related argument, the Whites contend that it was legal error for the circuit court to "simply re-appl[y]," in addressing permissive intervention, "the test for intervention as of right." It is true that the court relied on factors that it had considered in denying intervention as of right. But the Whites do not direct us to legal authority that prevents that. A party may fall short in attempting to meet one or more criteria of WIS. STAT. § 803.09(1), but if the party satisfies the three factors that must be considered under § 803.09(2) the party then has an opportunity to persuade a circuit court that there are good reasons to permit intervention. Relevant reasons for and against permissive intervention would logically tend to involve some or all of the same considerations at issue in applying the four criteria of § 803.09(1), which a court entertaining a motion under § 803.09(2) is free to consider in its exercise of discretion.

## CONCLUSION

¶55    For all of these reasons we affirm the circuit court order denying the Whites' motion for intervention as of right or, in the alternative, for permissive intervention.

*By the Court*.—Order affirmed.

Not recommended for publication in the official reports.